ALEXANDER MCKENZIE *vs.* BISMARCK WATER COMPANY.

Opinion filed April 16th, 1897.

### Time to Appeal from Order—When Begins to Run—Service upon Attorney.

An order of the District Court herein, granting a new trial, and vacating a judgment entered in that court in favor of the intervener, was made on October 10, 1896, and the same was served the same day upon counsel who appeared to oppose the motion for a new trial, such counsel not being the attorney of record for the intervener, and not being shown to have any authority to accept or receive service of papers for the attorney of record of the intervener. More than 60 days after such service of the order an appeal to this court was perfected by the intervener. A motion to dismiss the appeal, made in this court on the ground that it was taken too late, denied, and, *held*, that such service of the order as was shown in this case did not operate to limit the time within which an appeal could be taken. The service should have been made upon the attorney of record. The right of appeal is a highly valuable right, and where a party seeks to limit such right he is held to strict and technical exactness in practice.

### Errors in Law Occurring at Trial—What Are.

The action was tried in the District Court without a jury, § 5630, Rev. Codes, being then in force. The District Court, upon findings of fact and law duly filed, entered judgment in favor of the intervener. No statement of the case was settled. Plaintiffs' counsel moved for a new trial, and assigned "error in law occurring at the trial, and excepted to," etc., as the legal basis of the motion. The only error claimed was set out in the notice of intention, and was, in substance, that the trial court erred in one of its conclusions of law embraced in its findings on file. On such motion the District Court made its order vacating the findings and judgment, and granting a new trial of the action, which order was appealed from by the intervener. *Held*, that there was no legal basis for the motion for a new trial, inasmuch as an erroneous conclusion of law deduced from findings of fact is not an "error in law occurring at the trial," within the meaning of subdivision 7 of § 5472, Rev. Codes. "Errors in law," within the meaning of said statute, are rulings, instructions, and the like which occur before the rendition of a verdict or decision.

### Order of District Court Granting a New Trial of Case Tried by the Court is Void.

*Held*, further, that under section 5630 a motion for a new trial based on "errors in law occurring at the trial" will not lie for the reason that for such errors at least said section itself provides for a trial "anew" in another tribunal than the District Court. The order granting a new trial and vacating the judgment being made without any legal basis, and in the teeth of the statute, was void *ab initio*, and hence did not operate to grant a new trial, nor vacate the judgment. Such order is reversed. A District Court cannot vacate a judgment otherwise than in pursuance of statutory authority so to do. In this case the court below did not act pursuant to any statutory authority.

**Motion to Dismiss Appeal From Void Order Denied.**

Said judgment was appealed from to this court. In this court counsel moved to dismiss the appeal on the ground that prior to such appeal the judgment had been vacated by said order of the District Court. The motion is denied on the ground that, said order being void from the beginning, it did not operate to vacate the judgment.

**First Mortgagee Entitled to Rents.**

After a mortgage to secure an indebtedness was made by the Bismarck Water Company, and duly recorded, judgments were obtained against said company by the plaintiffs, and an action was instituted in the District Court by said judgment creditors in the nature of a creditors' bill, in which the Central Trust Company, as representing the mortgagees, was allowed to intervene as a party. In said action, and before the intervener became a party thereto, a receiver was appointed at the instance of the plaintiffs, and said receiver, in February, 1894, pursuant to the terms of his appointment, took possession of the plant of the water company, and ever since then said receiver has had the exclusive control and management of said company and its business, and has collected and received all of the rents, profits, and earnings of said company. Said mortgage, in terms, in addition to other property pledged the earnings and rents of the company to secure the payment of the debt, and was prior in time and superior in equity to the claims of the plaintiffs. *Held*, that all earnings and rents collected or received by the receiver are held subject to the superior lien of the mortgage, and the same must be paid over, after deducting the expenses of the receivership, to satisfy any deficiency which may exist after a sale of the property is made pursuant to the foreclosure judgment.

**Judgment of Sale—Without Right of Redemption.**

The court below, by its foreclosure judgment, directed that the entire plant of the Bismarck Water Company embraced within the mortgage, and consisting of real, personal, and mixed property, should be sold in its entirety, without separation, and sold without the right of redemption from such sale; and further directed that immediately upon such sale a deed of all of said property should be delivered to the purchaser, which deed would entitle the purchaser forthwith to take and keep possession of all of said property as absolute owner. *Held*, that this feature of the judgment entered below was entirely proper.

Appeal from District Court, Burleigh County, *Winchester*, J.

Action by Alexander McKenzie, for himself and others similarly situated, against the Bismarck Water Company, in the nature of a creditor's bill. George A. Hughes and Eber H. Bly, and the Central Trust Company of New York as trustee in a mortgage, intervened. There was a judgment declaring the mortgage a superior lien, and an order granting a new trial, and the trustee appeals.

Order reversed. Judgment modified.

*S. L. Glaspell,* and *S. E. Ellsworth,* ( *J. S. T. Waters,* of counsel,) for appellants.

The doctrine of preferential liens upon which alone plaintiffs can rely in their attempt to displace the lien of the prior mortgage held by the Central Trust Company is confined to cases involving the operation of railroads and cannot be extended to the case of a water company which operates only in the place of its creation and under the eyes of its owners. *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416, 421; *Bound* v. *Ry. Co.,* 50 Fed. Rep. 312; *Raht* v. *Attrill,* 106 N. Y. 423. It is well settled that debts for construction do not come within the class termed preferential. *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416; *Galveston Ry. Co.* v. *Cowdrey,* 11 Wall. 459; *Dunham* v. *Ry. Co.,* 1 Wall. 254; *Porter* v. *Pittsburgh, etc. Co.,* 120 U. S. 649, 671, 122 U. S. 267; *Toledo & etc., Ry. Co.* v. *Hamilton,* 134 U. S. 296. Claims for money advanced to pay coupons can in no case take precedence of the mortgage debt. The coupons were extinguished by payment and the persons furnishing the money were not entitled to be subrogated to the rights of the holders. *Trust Co.* v. *Ry. Co.,* 63 N. Y. 313; *Haven* v. *Ry. Co.,* 109 Mass. 96; *Cameron* v. *Tonie,* 64 Md. 507; *Kennedy* v. *Chapin,* 67 Md. 454. Besides the persons who advanced the money and thus averted the interposition of the bondholders were the officers and managers of the mortgagor company, it would seem peculiarly inequitable to recognize any priority in their favor. *Morgan's Co.* v. *Texas C. Ry. Co.,* 137 U. S. 171-196; *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416; *Ford* v. *Cent. Trust Co.,* 70 Fed. Rep. 144. Claims for services can not be preferred. *Wells* v. *So. Minn. Ry. Co.,* 1 Fed. Rep. 270; *Nat. Bank of Augusta* v. *Corolina, W. & W. Ry. Co.,* 63 Fed. Rep. 25. These claimants were the officers and not the employees of the water company. *Lewis* v. *Fischer,* 80 Md. 139. The judgments offered in evidence by plaintiff were insufficient as against the bondholders and their trustee to show that they were founded upon valid or existing demands. *Hassal* v. *Wilcox,* 130 U. S. 493, 503. The receiver was not entitled to a reference for exam-

ination and passage of his accounts, because he had not presented a full and definite statement, itemizing the various matters and verifying the account under oath. High on Receivers, § 801; *Peo.* v. *Columbia C. S. Co.*, 12 Hun. 585; *Heffron* v. *Rice*, 40 Ill. App. 244. Receivers accounts should be presented in such shape that interested parties may be fully informed thereby. *Hayden* v. *Chicago Title & Tr. Co.*, 55 Ill. App. 241; *Am. Tr. & S. Bank* v. *Frankenthal*, 55 Ill. App. 400. The person appointed receiver was ineligible because president and a stockholder of the defendant company. Section 5404, Rev. Codes; High on Receivers, § 72; *Atkins* v. *Wabash, etc. Ry. Co.*, 29 Fed. Rep. 161-173. *Finance Co.* v. *Charleston C. & C. Ry. Co.*, 45 Fed. Rep. 436; *Buck* v. *Life Ins. Co.*, 4 Fed. Rep. 849.

*Newton & Patterson* and *Ball, Watson & Maclay*, for respondents.

No statement of the case has been proposed or settled, so this appeal is based solely upon the judgment roll, § § 5462, 5630, Rev. Codes. Certain moneys and hydrant rentals are mortgaged to appellant, but such moneys and rentals are not to be the mortgagees, unless the water company should fail to operate the works so as to earn hydrant rentals and the trustee has taken possession under contract in the mortgage. *Sage* v. *M. & L. Ry. Co.*, 125 U. S. 361, 31 L. Ed. 694; *Dow* v. *Ry. Co.*, 124 U. S. 652; *Galveston, etc. Ry. Co.* v. *Cowdrey*, 11 Wall. 459; *Gilman* v. *Tel. Co.*, 1 Otto, 603; *Am. Bridge Co.* v. *Heidelbach*, 4 Otto, 798. The Central Trust Company intervened in hostility to the plaintiff. The receivership under a creditors bill is an equitable levy in favor of plaintiff and those who join him. *Sage* v. *Ry. Co.*, 125 U. S. 361. Plaintiff having obtained the appointment of a receiver is entitled to the benefits secured thereby and if appellant claims a better right he must have a receiver appointed for his benefit or the present one extended to cover its interest. *Ranney* v. *Peyser*, 83 N. Y. 1; *Howell* v. *Ripley*, 10 Paige, 43.

WALLIN, J. In the view we have taken of this case as dis-

closed by the record, we shall refer only to certain features of the case which, in our opinion, are decisive of the result in this court. The action was brought by Alexander McKenzie, a judgment creditor, for himself and others who might come in as co-plaintiffs later, to subject the assets of the Bismarck Water Company, including its franchises and earnings, to the payment of such judgments, and, incidentally, to have a receiver appointed of such assets, franchises, and earnings, and for the purpose of conducting the business of said Bismarck Water Company pending the litigation, and with the ulterior purpose of subjecting the assets, property, and earnings of said company to the payment of said judgments. Upon the summons and complaint, and upon motion of plaintiff's attorneys, an order to show cause why such receiver should not be appointed was served on the defendant, the Bismarck Water Company, on the 7th day of February, 1894, and said order was made returnable on the next day, and upon said return day said defendant made appearance by its attorneys in response to said order to show cause, whereupon the court, on the 8th day of February, 1894, appointed one Clarence B. Little, president and manager of the defendant, as receiver of the assets, franchises, earnings, and property of the defendant, and in its order of appointment clothed the said receiver with full power and authority to take possession of all of the defendant's property, earnings, and franchises; and said receiver did, under such order, take such possession, and has ever since been in such possession, and has in all respects carried on and administered the business and received the rents and earnings of the said defendant, and said defendant has, under the control of said receiver, ever since such appointment, been engaged in its business of furnishing a water supply to the City of Bismarck and its inhabitants. Subsequently, and before the trial of said action, George A. Hughes, and Eber H. Bly, who had obtained judgments against the Bismarck Water Company, were permitted to come in as interveners upon complaints setting out substantially the same facts as those contained in the complaint of Alexander

McKenzie. It further appears that long prior to the commence-
ment of this action, and prior to the rendition of any of said
judgments against the Bismarck Water Company, and on or ·
about the 1st day of August, 1887, said company executed and
delivered its mortgages to the Central Trust Company of New
York upon its said premises, property, franchises, and earnings to
secure the payment of 150 bonds of $1,000 each of even date with
said mortgage, bearing interest at the rate of 6 per cent. per
annum, and payable semi-annually on the 1st days of February
and August of each year for 20 years, and to become due on the
first day of August 1907, or upon default in the payment of any
installment of interest for six months, or in the payment of taxes;
that 115 of said bonds have been executed and delivered; that
said Central Trust Company accepted said trust, and duly quali-
fied as trustee, and has ever since been acting as such. The
mortgage was properly filed for record, and recorded in the office
of register of deeds of Burleigh county on the 14th day of June,
1887. It further appears that on petition to the District Court
leave was granted to the Central Trust Company to come into
said action as a party, and on the 2d day of March, 1894, said
Central Trust Company filed its complaint in intervention.
Upon the issues joined in the action a trial thereof was had in the
month of April, 1896, in the District Court, Judge Willian B.
McConnell presiding at said trial, he having been called in to try
the case by W. H. Winchester, the judge of the District Court in
which said action was pending. At the conclusion of said trial
the District Court (having determined the issues in favor of the
Central Trust Company) made and filed its findings of fact and
conclusions of law, and thereupon entered its judgment upon the
issues involved, whereby it was adjudged, among other things,
that there was a total indebtedness of $136,000.92 due the bond-
holders, and secured by said mortgage, and the judgment
directed that said mortgage be foreclosed, and said premises be
sold to satisfy and pay said indebtedness, and further adjudged
and held that the plaintiff's said judgments, and all of them, were

junior and inferior liens to the lien of said mortgage, and that said mortgage debt was prior in time and superior in equity to the said judgments, and all of them. The record also discloses the fact that prior to and at the time of the trial of said action certain motions had been noticed in the District Court, and were then pending therein, touching the receivership aforesaid; and the Central Trust Company, at or about the time of the trial of the action, sought to have said motions taken up and determined, but said William B. McConnell, the presiding judge, declined to take up said motions, or to hear the same, and did not do so for the reason assigned that, in his opinion, the judge of the district, said W. H. Winchester, had jurisdiction of such motions, and that he, the presiding judge, had been called into the case only to hear and determine the issues involved in the pleadings. In the month of September, 1896, attorneys representing all of said plaintiffs and judgment creditors served a notice of intention to move for a new trial, and for an order vacating the decision and the judgment of the trial court herein. Said notice of intention was served upon S. L. Glaspell, Esq., who was then, and at all times prior thereto, and long subsequent the sole and only attorney of record of the Central Trust Company. The notice stated that the notice for a new trial would be made "upon the ground of errors in law occurring at the trial" and duly excepted to by the parties making such application, and that such motion would be made upon all the records and proceedings had in the above entitled suit, including the findings of fact, conclusions of law, order for judgment, and decree heretofore entered herein."

The only error of law set out in the notice of intention or in the motion for a new trial as a ground or basis for the motion is couched in the following language, quoted from the notice of intention: "The court erred in making the first conclusion of law in the following language, as follows, to-wit: 'That the plaintiffs, Alexander McKenzie, George A. Hughes, and Eber H. Bly, are not, and neither of them is, entitled to the relief prayed by

them or him, and the complaints of each thereof should be dismissed.'" This motion was brought on to be heard before the District Court, Judge W. H. Winchester presiding, and after hearing counsel, and on October 10, 1896, the court made its order thereon, and, after reciting that the same was made on said notice of intention, and "upon all of the files, records, and proceedings heretofore had in said action," ordered "that the findings of fact, conclusions of law, and judgment and decree heretofore entered herein be, and each of them is hereby, and in all things vacated and set aside, and a new trial is hereby granted and ordered herein." The order further recited that at the hearing of the motion "S. L. Glaspell, Esq., and Ormsby McHarg, Esq., appeared in opposition thereto." An exception was taken by the Central Trust Company to the order. The original order granting the new trial, etc., as it appears in the record, bears upon its face margin the following indorsement: "Service is hereby admitted this 10th day of October, 1896. S. L. Glaspell, Ormsby McHarg." On the 16th day of December, 1896, a notice of appeal and undertaking was served by the attorneys of the Central Trust Company upon the attorneys for the plaintiff. The substance of the notice of appeal is as follows: "The Central Trust Company of New York appeals from the judgment and decree herein made on the 23rd day of May, A. D. 1896, and from the order herein made on the 10th day of October. A. D. 1896, and from each and every judgment, decree, and order made in the above entitled action, and from the whole and every part of each such judgment, decree, or order." We find in the record also a voluminous mass of what appear to be depositions taken in the case; also what appears to be oral evidence in the case in the form of typewritten matter. The oral evidence is authenticated by the affidavit of the stenographic reporter of the trial. The depositions are not identified by the certificate of the presiding Judge, nor at all as depositions used at the trial, and there was no attempt made to settle a statement or bill in the case. The only authentication of this mass of evidential documents, except the oath of the steno-

grapher to a part thereof, is contained in the certificate of the clerk of the District Court transmitting the record, the material part of which is as follows: The clerk certifies "that the above and foregoing is the original notice of appeal, with proof of service thereof, and the original undertaking given therein; also the original order and judgment appealed from; judgment roll, and all the papers used by each party in the above entitled action; and the same are transmitted to the Supreme Court pursuant to said appeal." When the case was reached in its order in this court, counsel for plaintiffs filed and presented a motion to strike out said testimony from the record and abstract, and also to strike out all matter in the record and abstract relating to said receivership; also to dismiss the appeal from the order granting a new trial, etc., and to dismiss the appeal from the judgment. Said motion was argued by counsel in connection with the argument of the case upon its merits, and the decision of the motion was reserved until the court should determine the whole case. The principal ground of the motion to dismiss the appeal from the order was the claim by respondents' counsel that it appeared that the appeal from the order was made more than 60 days after said order was "served upon appellant's attorney." The ground alleged for dismissing the appeal from the judgment was that said appeal was not taken until after the judgment had been vacated by said order, and hence that there was, when the appeal was taken, no judgment to appeal from. The ground relied on for dismissing the appeal from the other orders referred to vaguely in the notice of appeal was that said orders were non-appealable, and that, if appealable, the notice was too late with respect to the same. The ground of the motion to strike the evidence from the record was that the same had nct been authenticated by a statement of the case or otherwise.

We shall first consider the motion to dismiss the appeal from the order granting a new trial and vacating or purporting to vacate the decision and judgment. That order was made and

signed by the trial court on the 10th day of October, 1896, and
the indorsement on its margin, relied upon as an admission of
written notice of such order, was made on the same day. If
written notice of the order was in fact regularly served on the
appellant's attorney (S. L. Glaspel) on October 10, 1896, then
the motion to dismiss the appeal from the order must be granted,
because the notice of appeal was not served until December 16th,
which date is more than 60 days after October 10, 1896, the date
of the order appealed from.  The motion to dismiss the appeal is
based wholly upon the record, except that an affidavit on inform-
ation and belief is made by counsel that the order granting a new
trial was "served upon appellant's attorney on the 10th day of
October, 1896," but the affidavit refers in terms to the record,
and makes it a part of the affidavit, and hence the affidavit can
possess no other or further probative strength than the record
itself.  In other words, we construe the affidavit as resting upon
the record, and there is no evidence that the affiant had know-
ledge of the service of the order upon Glaspell independently of
the knowledge imparted by the record.  Upon the argument it
was asserted and not denied that S. L. Glaspell was not present
at Bismarck upon the hearing of the motion for a new trial, nor
present when the trial court made the order in question; nor is it
claimed that Glaspell made the indorsement upon the margin of
the order above referred to, nor that he affixed his name to said
indorsement, nor is there a shadow of evidence in the record that
Glaspell ever saw the order, or a copy thereof.  It was further
conceded that said Ormsby McHarg wrote the indorsement upon
the margin of the order, and signed the same with the name of
S. L. Glaspell and his own name.  The order, it is true, recites
that both Glaspell and McHarg were present in court, and
opposed the motion, but, in view of the admission in this court,
such language must be construed as meaning only that Glaspell
was constructively present in court, being represented there by
McHarg, so far as opposing the motion is concerned.  To limit
the right of appeal from an order, written notice thereof must be

served. Rev. Codes, § 5605. Upon the record, and upon the admissions made upon the argument in this court, the question is presented whether, as a matter of fact, written notice of the order sought to be appealed from was regularly served, or served at all, upon S. L. Glaspell, attorney for the appellant. We have no hesitation in stating, and so hold, that there is no proof of such service. No claim is made that service of the order or written notice of the order was made upon Glaspell at any time or place other than as above explained. The statute requires that service of papers in an action after a suitor has appeared by attorney therein must be made upon such attorney. Rev. Codes, § 5732. Such service must be made either by delivery to the attorney, personally, or, in cases where the attorney is absent from his office, the service may be made by delivering to his clerk; or other person in charge of the office, or in some one of the modes specifically pointed out in § 5724, Rev. Codes. Service may also be made by mail. Section 5725. But no claim is made that written notice of the order appealed from was made by either or any of the several ways prescribed in the statutes we have cited. The motion rests upon the indorsements made upon the order by McHarg, and nothing else whatever. It appears on the face of the order that McHarg appeared in court to oppose the motion for a new trial. Under such a state of facts we will assume that McHarg appeared with the knowledge and consent of the attorney of record who opposed the motion; but we are not at liberty to go further, and indulge the presumption that he (McHarg) had been expressly authorized to accept service of written notice of the order, or of any paper which, by the statute, is required to be served upon the attorney of record personally. We know of no authority warranting such a practice, and to tolerate it would, in our judgment, be a dangerous innovation upon the settled practice to the contrary. The right of appeal is in the highest degree valuable to the litigant, and there is abundance of authority holding that where a party seeks to restrict or limit such right by the service of notice or papers of

any description he will be held to strict and technical exactness of practice. This rule is recognized in *Richardson* v. *Roger*, 37 Minn. 461, 35 N. W. Rep. 270, wherein the court cites *Champion* v. *Society*, 42 Barb. 441, with approval, and states the rule as follows: "A party seeking to avail himself of the statutory limitation of his adversary's right to appeal should be held to strict practice." This rule is illustrated and applied in the following cases: In re New York C. & H. R. Ry. Co., 60 N. Y. 112; *Good* v. *Daland*, 119 N. Y. 153, 23 N. E. Rep. 474; *Corwith* v *Bank*, 18 Wis. 560. See, also, *Evans* v. *Backer*, 101 N. Y. 289, 4 N. E. Rep. 516, illustrating the extreme strictness of the practice required in limiting the right of appeal. The cases cited from New York clearly hold that to serve a paper upon the proper attorney by copy is not sufficient to limit the right of appeal, unless a notice is also served. In this case we are not required by the facts to go so far, as we hold that no service whatever of the order is shown to have been made upon appellant's attorney of record. We therefore hold that the appeal from the order is properly before us for determination.

Upon the merits we unanimously agreed that the order granting a new trial and vacating the decision and judgment was erroneously made, and was illegal from its inception. In the first place, we hold that the ground (there was but one) upon which the plaintiff applied for the order was not an "error in law occurring at the trial," within the meaning of that phrase as used in the statute, and as understood by the profession; nor did such alleged error occur during the trial of the action, nor was the alleged error ever embodied in an exception settled by the trial court. "Errors in law," within the meaning of the statute (Subd. 7, § 5472, Rev. Codes,) are such errors in rulings and in instructions and the like as may occur during the progress of the trial, and before the rendition of the verdict or decision. This is elementary. Haynes, New Trials & App. § 100, pp. 282-284. To designate an alleged error in a conclusion of law based upon a finding of fact as an "error in law occurring at the trial" is, therefore, a

misnomer, and wholly without authority in the law of procedure. Again, if the obnoxious conclusion of law which is put forward as the sole basis for the application for a new trial was erroneous in fact, it was practically harmless, because such conclusion was never embodied in the judgment, but, on the contrary, the opposite conclusion was incorporated in the judgment. The part of the conclusion which is objected to is not that the mortgage lien is held to be prior or superior to the judgment liens of the plaintiffs, for, as we understand counsel, this clause of the conclusion is acquiesced in by counsel, and the only feature objected to is that the court declared that the complaints of the plaintiffs should be dismissed. An inspection of the judgment as entered discloses that none of the complaints of the plaintiffs were in fact dismissed. Moreover, it is manifest that the plaintiffs are not sent out of court by the judgment, but; on the contrary, are still in court as parties, and may yet be heard for the ulterior purposes of the case. Moreover, if we turn to § 5630, Rev. Codes, it becomes transparently clear that upon the ground of errors in law—*i. e.* "rulings," etc., occurring at the trial—a motion for a new trial will not lie in the District Court. For such errors a trial anew could be had in this court, under the section above quoted, and which must govern this case.

It is unnecessary to reiterate the obvious conclusion that there never was any legal basis for the order appealed from, and hence that the order never had any legal inception or operation. It was made without authority of law, and in defiance of the statute. In this connection it is proper to add that, inasmuch as the motion for a new trial was leveled at a conclusion of law only, and did not relate to the facts, nor in any way involve the evidence, it will be unecessary to consider the evidence or pass upon respondents' motion to strike the evidence from the record in disposing of the appeal from the order. The appeal from the judgment, in our opinion, will lie, and the motion to dismiss as to the judgment must likewise be denied. As we have held that the order was made without any authority or power in the

District Court to make the same, or to consider the motion upon the papers presented as a basis for the motion, it follows that the order, in legal contemplation, was invalid in its inception, and never operated to vacate the judgment. The court in this case being without power to grant a new trial, its action in that direction had no effect. A District Court is without authority to vacate its own judgments upon the merits otherwise than in pursuance of statutory authority so to do, and such authority was not pursued in the case at bar. The record does not disclose a case of mere error in granting a new trial. It is a case where the court below had no authority to entertain or rule upon the application for a new trial. Turning to the assignments of error in appellant's brief in so far as they relate to the judgment, we find but two, viz.: First, that "the court erred in refusing to entertain the motion made by the Central Trust Company * * * affecting the receivership;" second, "the court erred in not allowing costs to the * * * Central Trust Company." As has been seen, a receiver was appointed in this action about the time of its commencement, to-wit, on the 8th day of February, 1894, and such receiver has ever since been in possession of the property of the Bismarck Water Company, and has been in the sole control of the business of said company. It has also been stated that certain motions in the District Court touching said receivership had been noticed and were pending when Judge McConnell came in to preside at the trial of the case, and that, on the request of the Central Trust Company so to do, Judge McConnell declined to take up the motions, and did not do so, but refused, and stated as a reason for so doing that in his judgment Judge Winchester had jurisdiction over such motions. Whether Judge McConnell's reasons for nonaction were valid or not cannot now be considered, inasmuch as the remedy for the nonaction of a court upon a motion is not by appeal to this court. Appeals can be made, under our statute, only from judgments and orders.

We think the assigment of error based upon the failure of the

trial court to award costs to the Central Trust Company is unten-able. The action is purely equitable in its nature, and in such actions costs are discretionary with the District Court. Section 5580, Rev. Codes. It is true that the Central Trust Company, as the prevailing party, would be entitled to recover its disburse-ments in the District Court, under § 5578, *Id.*, but, so far as appears of record, no application has been made to the clerk of the District Court to tax such disbursements, and hence there can be no investigation instituted here relating thereto.

Under the somewhat anomalous circumstances of this case, we deem it unnecessary and unwise to rule upon respondent's pre-liminary motion to eliminate from the record and abstract the evidence and certain proceedings relating to the receivership. Our conclusions are based upon questions arising upon the statutory rule proper, and are in no degree influenced by the matter sought to be eliminated by the motion. Whether such matter is, or is not considered, our conclusions will be the same.

For the guidance of the clerk of the District Court in taxing the costs and disbursements in this court, we will here state that we hold that upon the appeal from the order the appellant will recover costs in this court, and in addition thereto disbursements for printing his brief and 83 pages of his abstract, and only 83 pages. On the appeal from the judgment the respondents will recover the usual costs and disbursements in this court.

We deem it proper to remark here that this case is one of unusual importance, in view of certain facts which are conceded in argument, or shown by the record to be true. It is conceded that the Bismarck Water Company is insolvent, nor does it join in this appeal. Its property, while of considerable value, is insufficient to pay the principal creditors, the bondholders, whose claims, as we construe the mortgage, are secured by a first lien upon its assets, including its earnings. The matter of the receiv-ership presents an aspect of the case which is very serious. The receiver was, when appointed, a stockholder of the Bismarck Water Company, and one of its officers. Hence he was *prima*

*facie*, at least, a person not impartial as between the parties, and therefore not a proper person to act in the capacity of receiver. Rev. Codes, § 5404; High. Rec. § 72. The principal creditors are represented by the Central Trust Company, which company, by its attorneys, have frequently brought to the attention of the District Court the fact that they were dissatisfied with the appointment of the receiver, and that the receiver should be required to regularly account for his doings as such, and should then be discharged from his trust. These protests have proven to be unavailing. The receiver has never filed an account properly itemized and sworn to, nor has the trust company been accorded an opportunity to challenge any account of the receiver by a proper trial based upon a receiver's account duly itemized, sworn to, and filed. This condition of affairs has existed for over three years, during which period large revenues have come into the receiver's hands, and he has suffered the interest on the secured debt to accumulate without liquidating or offering to pay such interest, or any part thereof. Meanwhile the large revenues of the company derived from water rents have been paid out by the receiver in the discharge of diverse claims, the legitimacy of which is, at least in part; denied by the attorneys of the principle creditors, and the legality and propriety of which claims have never been properly considered, tried, or determined in the District Court. This alarming condition of affairs should be brought to a speedy termination, and we therefore desire here to outline to the trial court its further duties under the judgment with respect to this case. We have finally adjudged that the judgment of the District Court, which, among other things, directs a foreclosure of the mortgage, and sale of the property, should be affirmed, and said judgment as entered by the court below and herein modified and construed is therefore a final and nonappealable judgment. The directions of the judgment should, with all convenient dispatch, be carried out as follows, viz: By a regular sale of the mortgaged property in the manner pointed out in the judgment. Nor should such sale be

allowed to be impeded by the mere dilatory tactics of counsel. Second. If the amount realized by the foreclosure sale is inadequate to pay the amount of the debt secured by the mortgage, principal and interest, and there is left a deficiency thereof unpaid, then the earnings of the water company which have been collected, or shall before the sale be collected, by the receiver, shall and do constitute a fund to be first applied in payment of such deficiency to the extent of any surplus in the hands of the receiver after the payment of all the legitimate expenses of the receivership. Third. Should there still remain in the hands of the receiver any such surplus after paying the prior claims of the mortgagees, the same should be applied upon the junior and inferior claims of the plaintiffs whose claims as judgment creditors have been adjudged, and we hold properly adjudged, to be junior and inferior to those of the mortgagees. Fourth. If the property sold at the foreclosure sale does not bring an amount sufficient to liquidate the claims of the mortgagees, and a deficiency exists therein, the court below, on notice duly served, should allow and require at an early day a due and regular accounting to be made by the receiver upon a properly made out and verified receiver's account, consisting of items showing all details of receipts and expenditures connected with the receivership down to the day of sale, including a full showing of earnings, rents, and receipts of all kinds, as well as disbursements of every name and nature. An opportunity should be given to challenge said account, and, if any challenge thereof is made, a trial should be accorded thereon by the trial court, and the issues raised disposed of as speedily as is consistent with the due dispatch of business, to the end that any surplus in the hands of the receiver may be turned over and applied as hereinbefore directed; and the District Court should, by order, direct such surplus, if any, to be turned over and applied as we have heretofore indicated. To avoid being misunderstood, we desire to say, as we construe the mortgage and the judgment entered below based thereon, that the mortgagees, by virtue of express stipulation embraced in the

mortgage, have a lien upon all the property of the debtor, including the hydrant rents, profits, and earnings of the debtor, to secure the payment of the debt secured by the mortgage, which lien the judgment of the trial court, which we affirm and make the judgment of this court, holds to be prior and superior to the claims of the plaintiffs arising upon the judgments described in the complaint. It follows that the lien given by the mortgage is, therefore, a first lien upon all the net earnings, rents, and profits accruing to the Bismarck Water Company after the execution and delivery of the mortgage. In the case at bar, however, none of such earnings, rents, or profits are in any wise involved, save such as have come into the hands of the trial court through the medium of its receiver aforesaid, or shall before the foreclosure sale come into his hands; but as to such and so much thereof as has been collected and received, we hold that the same are covered and embraced within the lien of the mortgage, and are and have been impressed with such lien at all times since they came into the hands of the court below. Such earnings, therefore, must be applied to the liquidation of the debt, and the whole thereof must be so applied, if necessary, to discharge said debt, after deducting therefrom the legitimate expenses of the receivership. This case is readily distinguishable in principle from a numerous class of cases similar to it, but in which the rents, earnings, and profits of the debtor's business are not by any express stipulation pledged to secure the debt. Where such earnings and profits are not pledged in terms, no right to them can accrue to the mortgagee until he has obtained such right through a receiver appointed at his instance, or by extending an existing receivership to cover his claim. We also consider that this case is not governed by the principle which has controlled those decisions in which it has been held that a mortgage covering earnings does not create a lien upon gross earnings superior to the lien created by the seizure thereof by creditors as the property of the mortgagor, unless the mortgagee takes possession, or secures the appointment of a receiver, or the extension to his

claim of an existing receivership. Where the mortgage in terms permits the mortgagee to retain the possession, the lien of the instrument is necessarily confined to net earnings. The mortgagee agrees that the balance of the earnings shall go to pay current expenses. Of course, the mortgagee may not assert a lien on the gross earnings under such circumstances. It is only after the net earnings are separated from the gross receipts that the earnings embraced in the mortgage can be identified. Where they are susceptible of identification, the mortgagee secures an equitable lien thereon; and such lien, where it comes in collision with a subsequent lien of the same character (for the lien secured by the appointment of a receiver is an equitable, and not a legal lien,) is superior to it on the familiar principle that as between equal equities that which is prior in time will prevail. If, in this case, the mortgagee were claiming the right to gross earnings as against a creditor who had secured a legal lien thereon by attachment or garnishment, we would probably reach a different conclusion touching the respective rights of these parties to the fund. The order of the District Court appealed from, and purporting to vacate the judgment herein, and purporting to grant a new trial of the action, must be reversed, and held for naught from its inception. The judgment appealed from will be in all respects affirmed, except as herein modified, and as it is modified and construed in this opinion the court below is directed to proceed to carry out and enforce the same.

ON PETITION FOR REHEARING.

It is perhaps proper to state that our investigations, based upon a petition for a rehearing filed by the intervener, have led us to a conclusion upon a feature of the case not discussed by counsel upon the original argument, which is entirely at variance with our first impressions. We refer to that feature of the judgment entered below directing that the entire property described in the mortgage, embracing both real estate and personal property, should be sold in a lump, and possession thereof given to the purchaser at once, as in the case of personal property, and that

no redemption from such sale could be made. Our first impression was, and we so held in the original opinion, that a sale such as that directed by the judgment below could not, in view of the statutory right of redemption given in case of judicial sales of real estate, be upheld as a legal sale. Our first impressions upon this aspect of the case have been wholly changed and reversed after the consideration of authority which we regard as conclusive, upon the point. See *Farmers' Loan & Trust Co.* v. *Iowa Water Co.*, 78 Fed. Rep. 881; *Hammock* v. *Trust Co.*, 105 U. S. 77; *Simmons* v. *Taylor*, 38 Fed. Rep. 682-694; *National Foundry & Pipe Works* v. *Oconto Water Co.*, 52 Fed. Rep. 43-45, affirmed in 7 C. C. A. 603, 59 Fed. Rep. 20; *Columbia Finance & Trust Co.* v. *Kentucky Union Ry. Co.*, 9 C. C. A. 264, 60 Fed. Rep. 794. A number of the cases cited arose in states where a statutory right of redemption upon sales of real estate on judicial process is given as clearly as it is given in this state, and yet the cases cited are unanimous in holding that property such as that embraced in the mortgage under consideration may and should be sold in a lump, as in the case of personal property, without the equity of redemption. The very cogent reasoning upon which this apparently anomalous ruling is based is well epitomized in an opinion by Judge Jenkins in one of the cases cited (see 52 Fed. Rep. 43,) which was a waterworks case. The learned judge said: "The plant must be treated as an entirety with respect to any sale under judicial process. The defendant is a *quasi* public corporation. The plant is an integer. Separation of the parts would destroy the efficiency of the whole, working destruction to all interests concerned. The structure here is of the class of which canals, street railways, railroads, telegraph, telephone, electric light, and gas plants are examples, and can only be dealt with as an entirety,"—citing a large number of authorities. The Bismarck Water Company is not merely a private enterprise. It is also a corporation of a *quasi* public character, and has peculiar relations and duties with respect to the public. The property and franchise described in the mortgage, while primarily consist-

ing of both real estate and personal property, is so blended together and reciprocal in its uses that to divide it and sell each part separately—one part with and one part without the right of redemption—would destroy or greatly impair the value of the same, to the serious detriment of both public and private interests. Such property is not exclusively real estate, and hence not within the scope of the statute giving an equity of redemption after its sale by judicial process. It must follow, therefore, from established principles of law, that upon a sale of the plant in question, and a delivery of a deed to the purchaser pursuant to the judgment as entered below, the purchaser at such sale will be entitled to the immediate possession of all the plant, as in cases of a judicial sale of personal property, and will, by virtue of such sale and deed, be and become the absolute owner of the plant, free and clear from any right of redemption   Nor, after such deed is delivered, will any further assurance of title be necessary. All the judges concurring.

(71 N. W. Rep. 608.)