# POWERS ELEVATOR COMPANY v. WILLIAM STOLZ and Northern Real Property Company, a Corporation.

(157 N. W. 693.)

Action to foreclose mechanic's lien; trial *de novo*. Evidence examined, and held:

**Mechanic's lien — action to foreclose — trial de novo — evidence — lands sold under · contract — materials furnished to purchaser — knowledge of by vendor — extent of lien — restricted to buyer's equity in land.**

1. That the land company was not aware of the purchase of the lumber used in improvements upon a farm sold by it under contract for deed to Stolz, until nearly a year after said improvements had been made, and further that said land company never assumed the indebtedness. The operation of the lien was therefore properly restricted to Stolz's equity in the land.

**Trial court — discretion — costs — taxation.**

2. Under the proceedings of this case set forth in the opinion, the trial court did not abuse its discretion in taxing the costs in favor of the land company.

Opinion filed April 10, 1916.

Appeal from the District Court of Stutsman County, *Coffey,* J. Affirmed.

*S. E. Ellsworth,* for appellant.

The agreement of a grantee of an interest in real property to assume encumbrances thereon need not be in any stated form. It may be in the instrument under which the grantee acquires title, or by a separate written instrument, or it may even rest in parole, and in such case is not within the statute of frauds. It is separate and distinct from the conveyance. 27 Cyc. 1345, notes, 4 and 5; Moore v. Booker, 4 N. D. 543, 62 N. W. 607; Bossingham v. Syck, 118 Iowa, 192, 91 N. W. 1047; Neiswanger v. McClellan, 45 Kan. 599, 26 Pac. 18.

An agent to buy real estate may bind his principal to an agreement to assume encumbrances, even though the principal did not specially authorize it and did not know it had been made. Schley v. Fryer, 100 N. Y. 71, 2 N. E. 280.

The principal cannot, by private communications with his agent, limit the authority which he allows the agent to assume. Clark, Contr. p. 734, and cases cited; Robinson v. American Fish & Oyster Co. 17 Cal. App. 212, 119 Pac. 388; Cowie v. National Exch. Bank, 147 Wis. 124, 132 N. W. 900.

Every person for whose immediate use and benefit any building, erection, or improvement is made, having the capacity to contract, including guardians of minors or other persons, shall be included in the word "owner" thereof. Comp. Laws 1913, § 6828.

The owner shall be presumed to have consented to the furnishing of materials or labor, if at the time he had knowledge thereof and failed to give notice to the person who would be entitled to a mechanic's lien. Comp. Laws 1913, § 6814; Johnson v. Soliday, 19 N. D. 463, 126 N. W. 99; North Dakota Lumber Co. v. Haney, 23 N. D. 504, 137 N. W. 411.

The plaintiff was entitled to costs. Comp. Laws 1913, § 7792.

Prima facie the prevailing party in equity cases, as at law, is entitled to costs. 2 Wait, Pr. 472; 5 Enc. Pl. & Pr. 185, 186; Spengler v. Hahn, 95 Wis. 472, 70 N. W. 466; Comp. Laws 1913, § 7793; 11 Cyc. 27, 34; Beckwith v. Beckwith, 11 Colo. 568, 19 Pac. 510; Lawrence v. Getchell, 2 Cal. Unrep. 267, 2 Pac. 746; Couch v. Millard, 41 Hun, 212; Petitpierre v. Maguire, 155 Cal. 242, 100 Pac. 691; McDonald v. Benge, 138 Iowa, 591, 116 N. W. 602; Kerr v. Tierney, 146 Mich. 97, 108 N. W. 1099; Ferguson v. Popp, 42 Mich. 115, 3 N. W. 287; Meigs v. McFarlan, 72 Mich. 194, 40 N. W. 246; Westfeldt v. North Carolina Min. Co. 100 C. C. A. 552, 177 Fed. 132.

In such cases as this, the district court alone has jurisdiction, and the question as to who shall pay the costs is not determined by the amount of recovery. Carlson v. Beckman, 35 Neb. 392, 53 N. W. 203.

*Oscar J. Seiler* and *Marion Conklin,* for respondent.

Under the ordinary contract for the sale of land upon the crop payment plan, where the title is reserved as security for the purchase price, the vendor is in practically the same position as though he had deeded the land to the vendee and taken a mortgage back. Therefore, when the vendee becomes liable upon a mechanic's lien against the land, the interest of the vendor is not subject to the lien, unless it is shown that he acquiesced in the purchase and use of the materials. North Dakota Lumber Co. v. Haney, 23 N. D. 504, 137 N. W. 411; Nearing v. Coop, 6 N. D. 345, 70 N. W. 1044; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856; Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623; Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036; Johnson v. Soliday, 19 N. D. 463, 126 N. W. 99.

Parties cannot elect to try their cause on one theory in the lower court, and when defeated on that line assume a different position in the appellate court. 3 Cyc. 243.

Where there is evidence to support the findings of the trial court, they will not be disturbed by the appellate court. 3 Cyc. 360, 361, and cases cited; Syllabus in State ex rel. Trimble v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 621, 150 N. W. 463; Wykoff v. Kerr, 24 S. D. 241, 123 N. W. 733; Jackson v. Prior Hill Min. Co. 19 S. D. 453, 104 N. W. 207; Lee v. Dwyer, 20 S. D. 464, 107 N. W. 674; Mason v. Fire Asso. of Philadelphia, 23 S. D. 431, 122 N. W. 423;

Driskill v. Rebbe, 22 S. D. 242, 117 N. W. 135; Empson v. Reliance Gold Min. Co. 23 S. D. 412, 122 N. W. 346.

A preponderance of evidence against the trial court's findings of fact must clearly appear from the record on appeal, to overcome the presumption that the facts found are justified. Clarke v. Conners, 18 S. D. 600, 101 N. W. 883; Schmidt v. Anderson, 29 N. D. 262, 150 N. W. 871.

An appellate court will not interfere with the exercise of the discretion of the trial court, in awarding costs or granting allowances, except where abuse clearly appears. 3 Cyc. 342, and cases cited; McKenzie v. Bismarck Water Co. 6 N. D. 375, 71 N. W. 608; Brown v. Skotland, 12 N. D. 451, 97 N. W. 543.

Burke, J. On the 5th of April, 1910, the Northern Real Property Company sold upon contract a half section of land to the defendant Stolz for $7,506.84. Among the provisions of that contract was one that Stolz was to pay certain instalments—usually $600—the first of each November thereafter, until the purchase price had been reduced to a $1,750 mortgage, which was at that time an encumbrance upon the place. The contract contained the further provision that if the payments were not made and the contract was forfeited, all of the payments made and all of the buildings and improvements should be taken and deemed to be rental for the use and occupation of said premises from the date of the contract to the date of its termination. The first payment was to be $500, and was covered by additional security in the shape of a chattel mortgage. Stolz's copy of the contract was not to be delivered to him until he had paid this $500 note. Stolz went into possession of the land and incurred an indebtedness of $395.50 for building materials purchased of the Powers Elevator Company, for which they filed a lien upon the premises. An examination of the evidence convinces us that the land company knew nothing about this indebtedness until almost a year after the lien was filed. On the 30th of January, 1913, Stolz was in default, having failed to make any of the payments stipulated, and owing at that time considerably over $8,000 upon his contract. Upon that date the land company sent one Still to the village of Medina to make settlement of the claim. The negotiations were conducted in the bank at that place of which the

cashier was one Stege. Stege, Still, and Stolz were witnesses at the trial and each has given a version of the conversation. Mr. Still was acting under written instructions from the land company, and upon several occasions the president of the land company was called upon over the long-distance telephone, and he also has testified. From all of this testimony we are agreed that in the negotiations Still insisted that the first note of $500 upon which there was additional security be paid, and that then Stolz should be allowed to remove two small buildings from the place, cancel the contract, and receive back his notes marked paid. Stolz requested the land company to take care of the mechanic's lien, but Still insisted that he was acting under written instructions, and had no authority to assume this obligation, under exhibit 10, which is directed to him, signed by the president of the land company and reads as follows:

Jamestown, N. D., February 12, 1913.

$N.\frac{1}{2}$—3—138—69
$N.E.\frac{1}{4}$—35—139—69
Mr. S. W. B. Still,
   City,

Dear Steve:—

In compliance with our arrangement of to-day we hand you herewith note of William Stolz for $500, dated April 5, 1910, due Nov. 1, 1910, drawing interest at 6 per cent per annum from date until due, 12 per cent thereafter until paid. Interest payable Nov. 1, 1910, and annually thereafter. Interest not paid when due to bear interest at the rate of 12 per cent per annum until paid.

This is only one of a number of notes given for the purchase price of the $N.\frac{1}{2}$ of 3—138—69, the total price being $5,756.84, the only payments made being $100 applied on account of the whole deal, the proportion of which applied on this note would be about $8. No other payment has been made on this note.

This is secured by the chattel mortgage upon cattle, copy of which we handed you to-day. We wish to collect this note or take the cattle and conduct the necessary foreclosure proceedings to do so.

We also hand you herewith notice of cancelation to be served personally on Stolz if he can be found, and if not at his residence, the

same as a summons is served. This refers to the N.E.$\frac{1}{4}$ of 35—139—69, another quarter which he has purchased from us.

The matter is turned over to you to handle, with the understanding that if foreclosure proceedings are carried through that it will spoil four days' time for you, and that in that case your compensation is to be $25 over and above actual and necessary expenses. In case the matter is settled in a way that it does not require very much attention, compensation to you to be proportionately reduced.

Yours truly,

W. B. De Nault,

President.

Still testifies that his instructions were to collect the $500 from the chattel security and cancel the contract,—that Mr. Stege acted for Stolz and consulted with an attorney before the settlement was finally made. Still denies having assumed the lien. Mr. Stege—among other things—testifies that his bank had furnished Stolz with money to buy seed and feed and other things, and that when Still came up to make the settlement he (Stege) acted as interpreter for Stolz. That after considerable negotiations it was finally agreed that Stolz was to pay the $500 note and surrender his contract. That the land company in writing authorized the removal of the two frame buildings aforesaid, and that all other buildings were to remain on the property.

He further testifies:

A. I told Mr. Still the Powers Elevator Company held a lien against the buildings on that place, also they had Mr. Stolz's note secured by a chattel mortgage, and that they would have to take care of the lien, and if he would not do so, they should turn the note back to Mr. Stolz without any consideration. Mr. Still said, "We will take care of that." Then it was agreed that we would pay this $500 and interest.

Mr. Stege's testimony is undoubtedly honestly given, but upon his whole testimony his recollection appears vague and unsatisfactory.

Stolz testifies as follows:

Q. At the time that you signed this paper, exhibit E, what did Mr. Still, for the defendant Northern Real Property Company, agree you should have in return for this cancelation?

A. I wanted to take all of the buildings off, but he allowed me to take off only the summer kitchen and the barn.

. . . . . . . . . . . . . . . . . .

Q. What was said about the mechanic's lien on the other building at that time?

A. I could not very well say. The talk was in English. I could not understand, but Mr. Stege will tell you about that when he comes to Jamestown.

De Nault, the president of the land company, testifies that he had given specific instructions to Still in writing. That Stege called him up over the telephone from Medina, and asked him if he would be responsible for the mechanic's lien, and that he told him that he would not. Upon the whole testimony we have no hesitancy in holding, as did the trial court, that there was no agreement on the part of the land company to assume this indebtedness. The conversation in the bank culminated in the surrender of the contracts as aforesaid. This was effected by an instrument in writing signed by Stolz and his wife. This action was brought by the lumber company to foreclose its mechanic's lien, and, among other relief, asked that the land company be required to set forth its claim to the real property, and that they be decreed to have no interest superior to the lien of plaintiff. Defendant answered with a general denial setting up all of the facts in reference to their title, and asking that the title of the said defendant land company be quieted to such claim of the plaintiff, and that plaintiff be forever barred and enjoined from asserting the same. The matter came on for trial before the court, when the attorney for the lumber company made the following statement into the record: "We are in the action seeking, of course, to reach the equity of the defendant Stolz in this property by this foreclosure. Our contention will be to the effect that at the time of the filing of the lien the amount due upon the contract was very considerably less than the defendant Stolz agreed to pay for the land. There will be further evidence to the effect that the Northern Real Property Company, the other defendant, assumed the lien and is liable directly for its payment." Immediately following this statement the attorney for the land company had the following statement incorporated into the record: "We admit that at the time of the sale of the

material to the defendant Stolz he was in possession of the land in question under a contract of purchase, and we concede that the plaintiff has a perfect right to foreclose its mechanic's lien upon whatever equity the defendant Stolz had in the land at the time, and subject the equity of said Stolz to its lien, and to step into his shoes and carry out his contract, and that the plaintiff could not be deprived of such right by the defendant Stolz surrendering and canceling his contract; and that such act on the part of Stolz does not, in any manner, affect plaintiff's rights, and we are perfectly willing to and will show to the court exactly what has been paid by the defendant Stolz on this contract, and the balance due thereon, and we are willing that a decree be entered in this action for such foreclosure and for the sale of whatever equity the court finds that the defendant Stolz had in such land, but we do not admit that this defendant ever assumed the lien or is liable directly for its payment." Plaintiff did not accept the offer of the land company, and the trial proceeded, resulting in a decree that the lumber company had the lien upon Stolz's equity only, and the land company recovered its costs. This appeal follows, and a trial *de novo* is demanded. The evidence introduced covers 198 pages of the statement of the case. We are, of course, unable to reproduce the same, but after a careful study thereof have reached the conclusion that the land company was not aware of the purchase of the lumber or its use upon the land, and in the final settlement did not assume the indebtedness. The question, then, is one of law, and we agree that the mechanic's lien was properly restricted to Stolz's equity. This is so well settled by decisions of our court that we will not further discuss the proposition. North Dakota Lumber Co. v. Haney, 23 N. D. 504, 137 N. W. 411; Johnson v. Soliday, 19 N. D. 463, 126 N. W. 99; Salzer v. Claflin, 16 N. D. 601, 113 N. W. 1036; Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623; Wadge v. Kittleson, 12 N. D. 453, 97 N. W. 856; Nearing v. Coop, 6 N. D. 345, 70 N. W. 1044.

(2) The only remaining question relates to costs. Appellant states that he is entitled to costs under § 7792, Comp. Laws 1913, which reads as follows: "In all actions or proceedings for the foreclosure of a mortgage upon personal property or of a mortgage or other lien upon real property, the plaintiff or person commencing such action or proceeding shall be entitled to tax as a part of his costs, when the amount

of the debt secured by such mortgage or liens does not exceed the sum of $500, the sum of $25."

Defendant, on the other hand, insists that the costs should be taxed under § 7795, Comp. Laws 1913, which reads as follows: "In actions other than those specified in § 7794, costs may be allowed for or against either party in the discretion of the court. In all actions when there are several defendants not united in interest, and making separate defenses by separate answers, and the plaintiff fails to recover judgment against all, the court may award costs to such of the defendants as have judgment in their favor."

It is clear that this action is not one of those enumerated in § 7794, and is, therefore, controlled by § 7795. The matter of costs, therefore, is largely within the discretion of the trial court, and this discretion should not be disturbed except for abuse. 3 Cyc. 342; McKenzie v. Bismarck Water Co. 6 N. D. 361, 71 N. W. 608; Brown v. Skotland, 12 N. D. 445, 92 N. W. 543.

The costs then resting in the sound discretion of the trial court, we have but to refer to the facts already enumerated to show that such discretion was not abused. While plaintiff is the prevailing party (and recovered costs) against Stolz, he cannot be said to be the prevailing party against the land company. He demanded in his complaint a lien upon the land company's interest in the land, and this condition continued until the beginning of the trial, when for the first time he intimated that he might be satisfied with a judgment against Stolz's equity, but even then coupled this with an assertion that the land company had assumed the debt. At said time defendant offered to plaintiff the exact relief finally recovered. It is therefore evident that plaintiff's exorbitant demands necessitated the succeeding litigation, and the trial court was fully justified in placing the burden of costs upon his shoulders. The judgment is accordingly affirmed.

CHRISTIANSON, J. (concurring specially). I concur in an affirmance of the judgment, but I do not believe that the plaintiff was entitled to recover costs against the Northern Real Property Company, either as a matter of right or discretion. Manifestly § 7792, Comp. Laws 1913, cannot be construed so as to justify the allowance of such costs. This section is merely ancillary to the other statutory pro-

visions for the allowance of costs, and the legislature did not intend
by this section to allow a plaintiff in a foreclosure action to tax costs
against any additional or different parties than those provided for in
other statutory provisions relative thereto. The intent of this section
was merely to allow a party foreclosing a mortgage upon real or per-
sonal property or a lien upon real property, to tax as an additional item
of costs a certain amount for attorneys' fees. I am aware of no provision
in our statutes which would authorize a court as a matter of discretion
to award costs to a plaintiff in a foreclosure suit, except as against a
defeated party or parties. Ordinarily, the costs taxed in such actions
become a part of the judgment for the mortgage debt, and may be en-
forced in the same manner and to the same extent as the judgment for
the debt itself. In this case the plaintiff was permitted to, and did,
tax such costs against the principal defendant, Stolz, and plaintiffs'
judgment for foreclosure includes such costs. Plaintiffs' costs were
taxed, and are a part of a personal judgment against Stolz and a lien
against his equity in the real property involved. But so far as the
defendant Northern Real Property Company is concerned, plaintiff
did not prevail. In its complaint the plaintiff asserted that its lien
was prior to all claims and interests which the Northern Real Prop-
erty Company had or claimed in the real estate in question, which
necessitated that the Northern Real Property Company present an
answer setting forth in full the nature of its interest in such realty.
Before the commencement of the trial, as stated in the majority opinion,
the contentions of the parties were fully and plainly stated. The plain-
tiff might then and there, without any trial whatever, have obtained
the judgment which it eventually obtained; but plaintiff was not satis-
fied with this, and sought to reach not only the equity of the defendant
Stolz in the land, but sought also to establish a personal liability on
the part of the Northern Real Property Company, and obtain an
adjudication that this company had assumed the payment of the lien.
The very issue which plaintiff persisted in litigating was determined
adversely to its contentions. How, then, can it be said that it was a
prevailing party as against such defendant? And even under the pro-
visions of § 7795 the court had no power to award costs against a pre-
vailing defendant. Hence, it seems to me that the trial court had no

power, discretionary or otherwise, to award costs against the Northern Real Property Company, and it merely performed its plain and manifest duty in refusing to do so.