THE PACIFIC NORTHWEST PACKING CO. v. ALLEN et al.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 741.

1. MORTGAGES—FORECLOSURE—REDEMPTION.

Notwithstanding Sess. Laws Wash. 1899, p. 87, § 5, providing that sales of real estate shall be subject to redemption, sale under mortgage of lease of a portion of a harbor area, a wharf, a fishing and fishcanning plant, and all personal property used for carrying on the business, may be without redemption; the chief value of the property consisting in its integrity as a fishing and canning plant.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Bausman & Kelleher, for appellant.

Preston, Carr & Gilman, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity to foreclose certain mortgages upon—

"A certain lease, dated the 12th day of June, 1899, made by the state of Washington to Pacific Northwest Packing Company, a corporation organized under the laws of the state of Washington, of which corporation the said defendant, The Pacific Northwest Packing Company, is the successor, of a certain portion of the harbor area in front of blocks 88½ and 89 in the town of Blaine, beginning at the west corner of block 89, Blaine tide lands, on inner harbor line [then follows a specific description of the premises]; being all the harbor area lying westerly of said frontage between the inner and outer harbor lines, and which property is situated in Whatcom county, state of Washington, and also the wharf, cannery buildings, erections, and all other structures on said above-described leased premises and also all the right, title, and interest the said defendant, The Pacific Northwest Packing Company, has in or to that certain piling, roadway, or approach to the wharf and other structures above mentioned from the main upland to said wharf and other structures, which said approach connects said wharf and other structures with the upland; also the entire canning, packing, and operating plant of said The Pacific Northwest Packing Company, situated in, on, and about said above-described premises, and particularly the following described personal property, to wit."

Then follows a specific description of divers tools, machinery, materials, supplies, fish-trap locations, steamboat, and personal property of every kind, character, and nature, used for carrying on and conducting the cannery business. It is, among other things, provided in the lease that:

"The state of Washington reserves the right to regulate, either under rules established by the harbor-line commission or by legislative enactment, or by both methods, the rates of wharfage, dockage, and other tolls to be imposed by the lessee upon commerce for any of the purposes for which said leased area may be used, and the right to prevent extortion, discrimination, and exclusive privileges. The state of Washington, by the said harbor-line commission, shall have power to annul or cancel this lease upon a breach of any of its conditions by the lessee. The state of Washington reserves the right to cancel this lease at any time upon payment to the lessee of the value of the improvements made on the area leased hereby: provided, that this covenant shall not be held to apply to any cancellation of this lease ordered by the said commission on account of fraud or breach of any of the covenants of this lease, or a failure to file and keep a good and sufficient bond with the said commission in accordance with section 53 of an act relating to public lands, approved March 16, 1897, as amended by chapter cxxii, Session Laws 1899; but in such case the improvements upon the said leased area shall become the property of the state."

The court, among other things, found—

"That all of the property of the defendant, subject to the mortgages above described, has been since the commencement of this action, and now is, in the possession of John H. McGraw, receiver herein. The court further finds that the chief value of the said mortgaged property consists in its integrity as a fishing and fish-canning plant, and that the chief value of the leasehold interest of a portion of the harbor area in front of blocks 88½ and 89 of Blaine tide lands, described in said mortgages and hereinabove, held under a lease from the state of Washington, and subject to the lien of the complainant's mortgages, arises from the use of said leasehold interest in said portion of said harbor area in connection with the fishing and fish-canning business heretofore carried on by the defendant The Pacific Northwest Packing Company, and that the chief value of the fishing rights hereinabove described consists in their use in connection with and as a part of the fishing and fish-canning plant of the said defendant; that the said leasehold interest in said portion of said harbor area would be of little value, except for its use and occupation in connection with the fishing and fish-packing business of the said defendant, and that, if the said leasehold interest of said portion of said harbor area should be sold separate and apart from the other property subject to the lien of complainant's mortgages, the value both of the said leasehold interest and of said other property would be largely destroyed, and that it is therefore necessary, in order that the interests of all persons in any wise interested in this action or in said property should be fully protected, that all of said property should be sold as an entirety and in one parcel, except that, in order to comply with the provisions of the laws of the state of Washington, it will be necessary to sell the said fishing licenses in groups of not more than three to one purchaser; and, further, that all of said property should be sold absolutely, without redemption, and not subject to any law or laws of the state of Washington allowing redemption from mortgage sale,"—and in its final decree ordered that the entire property be sold in one parcel, without redemption, "except that the fish-trap licenses, and locations covered thereby, be offered for sale in groups, of not more than three in any one group."

This appeal is taken from the final decree. There are but two assignments of error, viz.:

"(1) The court erred in ordering, adjudging, and decreeing that all the property, both real and personal, covered by complainant's mortgage fore-

closed upon in this action, should be sold to satisfy complainant's demand herein as an entirety and as one property, and not in separate parcels. (2) The court erred in ordering, adjudging, and decreeing that any and all the real property covered by complainant's mortgages foreclosed upon in this action, and more particularly the leases of harbor lands and area from the state, should be sold to satisfy complainant's demand herein, as not subject to any law or laws of the state of Washington allowing redemption from mortgage sales, and absolutely, without redemption."

The statute of Washington relating to sales of property under execution, upon which appellant relies in support of these assignments of error, reads as follows:

"Upon a sale of real property under execution, decree or order of sale, when the estate is less than a leasehold of two years unexpired term, the sale shall be absolute. In all other cases such property shall be subject to redemption." Sess. Laws 1899, p. 87, § 5.

It is contended by appellees that the interest acquired by appellant in the harbor area, as specified in the lease, "is less than a leasehold of two years unexpired term" mentioned in this statute; that the harbor area should not be treated as land or real estate, in the ordinary understanding of those terms; that under the provisions of article 15 of the constitution of the state of Washington, and sections 1, 2, 3, and 53 of the Laws of Washington of 1897, pp. 229, 230, 255, and the terms of the lease, it is apparent that the lease, as given, only created an estate at will, and was a mere privilege or license given by the state, liable to be terminated at any time by the act of the state, without the consent of the lessee, and should not be construed as giving the right of possession for any definite period of time, with the simple condition of prompt payment of rent. Waiving for the time being, at least, these preliminary points discussed by counsel, we shall proceed to the consideration of the question principally relied upon by appellant as presented by the assignment of errors.

It will be observed by reading section 5 of the Laws of 1899 that the statute does not extend the right of redemption to personal property. It has reference only to real estate,—to lands in the ordinary acceptation of those terms. The legislature, in dealing with this question, used general terms, without reference to the necessities that might arise by the exceptional character, conditions, and surroundings of the property involved. In construing statutes of this general character, the legislature will be presumed to know that exceptions might arise to the language used, which would by a literal construction lead to absurd results. In such cases the authorities declare that the statute should receive a sensible construction; that the reason of the law in such cases should prevail over its letter. Does the statute of Washington apply to the present case? All the property mentioned, constituting the material parts of the entire plant, and embracing the real estate, franchises, and personal property, are so essentially blended and intermingled as to render each indispensable to the value of the other, so that they cannot be separated without material injury to the value of the other parts. From its character, situation, and surroundings, it was necessary, in the interest of all parties directly concerned, that there should be no redemption. The entire plant, with all its buildings, structures, machinery, fixtures, appliances, franchises, and

rights, must necessarily be treated as an entirety. Separation of the real estate, if any part of the property could be treated as such, would destroy the efficiency and value of the whole. It is apparent that the legislature never intended that the statute of 1899 should have any application to such a case. Ever since the decision in Hammock v. Trust Co., 105 U. S. 77, 26 L. Ed. 1111, it has universally been held that where a railroad has mortgaged its real and personal property, including its franchises, as a whole or as an entire property, a sale under a decree foreclosing such mortgage must be of the property as an entirety, and without redemption.

In Sioux City Terminal R. & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 82 Fed. 124, 137, the court said:

"This statutory right of redemption and right to a sale in separate parcels does not extend to the real estate of a corporation which is mortgaged, with its franchise, to acquire, hold, and use property for public purposes, and whose chief value depends upon its unity, and its use for and appropriation to those purposes."

In McKenzie v. Water Co., 6 N. D. 361, 379, 71 N. W. 608, 614, the court, on petition for rehearing, after citing cases on this point, among other things, said:

"The Bismarck Water Company is not merely a private enterprise. It is also a corporation of a quasi public character, and has peculiar relations and duties with respect to the public. The property and franchise described in the mortgage, while primarily consisting of both real estate and personal property, is so blended together and reciprocal in its uses, that to divide it and sell each part separately,—one part with and one part without the right of redemption,—would destroy or greatly impair the value of the same, to the serious detriment of both public and private interests. Such property is not exclusively real estate, and hence not within the scope of the statute giving an equity of redemption after its sale by judicial process. It must follow, therefore, from established principles of law, that upon a sale of the plant in question, and a delivery of a deed to the purchaser pursuant to the judgment as entered below, the purchaser at such sale will be entitled to the immediate possession of all the plant, as in cases of a judicial sale of personal property, and will, by virtue of such sale and deed, be and become the absolute owner of the plant, free and clear from any right of redemption."

The general doctrine applicable to this case is not confined solely to railroad property, nor to cases where the general public is interested. It has been applied to canals, telegraphs, telephones, and electric light, gas, and water plants, as well as railroads; and in all such cases it has been held, under a great variety of circumstances and conditions,—some stronger and others less in degree than presented in this case,—that the entire property should be sold as an entirety, without the right of redemption, notwithstanding the provisions of state statutes where the property is situated allowing redemption of real estate. National Foundry & Pipe Works v. Oconto Water Co. (C. C.) 52 Fed. 43, 45, 58; Columbia Finance & Trust Co. v. Kentucky Union R. Co., 9 C. C. A. 264, 60 Fed. 794, 802; Farmers' Loan & Trust Co. v. Iowa Water Co. (C. C.) 78 Fed. 881, 889, et seq., and authorities there cited; McFadden v. Railroad Co., 49 N. J. Eq. 176, 190, 22 Atl. 932, 937.

The true doctrine upon which the principles above stated are founded is that of necessity arising from the condition and character of the

property mortgaged, although it is in several of the cases based upon the public or quasi public character of the corporation whose property is to be sold. But even if it should be conceded that the public or quasi public character of the corporation or property is in any manner essential to the application of the rule, it exists in this case. The record discloses the fact that the entire interest of the appellant was mortgaged, including "all the right, title, and interest the said first party has in or to that certain piling, roadway; or approach to the wharf and other structures above mentioned, from the main upland to said wharf and other structures, which said approach connects said wharf and other structures with the upland." It cannot be said that the cannery buildings and other structures erected by appellant upon the premises mortgaged in any manner change the public character of the wharf or destroy the interest of the general public in the maintenance and use of the wharf, roadway, and approach; hence the reason assigned in the railway cases for not following the statutory provisions for redemption, or selling the property in separate parcels, are applicable to this case.

The conclusions reached upon this question are conclusive of the whole case, and render it unnecessary to decide the other points presented by appellees.

The decree of the circuit court is affirmed, with costs.