NATIONAL BANK OF COMMERCE v. CORLISS.

1. RECEIVERS—PRESERVATION OF REAL ESTATE AND INCOME—EX-
CEPTION TO GENERAL RULE.

Where a receiver for a creamery company was appointed
temporarily by the lower court to take charge of its real
estate and income for the purpose of preserving the prop-
erty and averting the danger of a ruinous loss, and not
primarily for the purpose of acquiring possession of same,
the court did not abuse its discretion but properly applied
the exception to the general rule required by reason of
the complexity of the property involved.

2. CORPORATIONS—INSOLVENCY—COMPLEX PROPERTY—SALE AS EN-
TIRETY—REDEMPTION—EXCEPTION TO GENERAL RULE.

Where an insolvent creamery company's property as a
going concern was worth upwards of $100,000, and was an
admixture of real property, personal property, and intang-
ible values arising out of milk routes and patronage of
farmers, and if the milk routes were eliminated the
farmers would find other outlets for their milk, result-
ing in loss and depreciation in value of the entire proper-
ty about 50 per cent., sale thereof as an entirety without
right of redemption was proper as an exception to the
general rule in favor of such right in case of sales of real
estate.

Appeal from Clinton; Moinet (Edward J.), J. Sub-
mitted October 14, 1921.    (Docket No. 127.)    De-
cided February 20, 1922.

Bill by the National Bank of Commerce of Toledo,
Ohio, against Leroy Corliss, the Waterloo Creamery
Company and another to establish and foreclose a
lien, and for an accounting. From a decree for plain-
tiff, defendants Corliss and Waterloo Creamery Com-
pany appeal. Affirmed.

*Smith, Beckwith & Ohlinger, F. J. Shields,* and *E. C. Froehlich,* for plaintiff.

*Hotz & Lee* and *Searl & Searl,* for appellants.

BIRD, J.   In January, 1920, defendant Ekenberg Company, of Cortland, New York, owned a milk plant in Elsie, another at Ovid, and a cheese factory at Eureka, in Clinton county, in this State.   On January 3, 1920, the Ekenberg Company sold these properties to defendant Leroy Corliss for a consideration of $120,000.   Fifteen thousand dollars was paid down and the balance was evidenced by promissory notes, payable on various dates up to August 1, 1920.   Corliss took possession of the plants and soon thereafter transferred his interest to the defendant Waterloo Creamery Company, and that company commenced to operate them, and continued to do so until September 23, 1920, when they were closed on account of insufficient funds.

The plaintiff purchased $30,000 of these notes. When they became due they were not paid and plaintiff filed this bill praying that its notes be declared a first lien on the property and that a temporary receiver be appointed to operate the plants.   After the filing of this bill, and on September 10, 1920, the plaintiff, with other note holders, had a conference with Corliss and the creamery company and an agreement was reached in which Corliss and the creamery company agreed to assign their equitable interests in the plants to one Kramer, as trustee, to further secure the payment of the notes.   Corliss and the creamery company further promised to make a payment of $10,000 at once and further smaller payments at stated times.   This agreement also provided that Corliss and the creamery company should execute a bill of sale of the machinery and equipment which they had added to the plant since their purchase, and that there should be

certain changes made in one of the plants. This agreement was partially carried out, but the $10,000 was not paid, neither were the changes made in the plant. By reason of the failure to carry out this agreement plaintiff filed a supplemental bill setting up the subsequent agreement and the failure to carry it out, and prayed an accounting of the amount due on the notes, a first lien on the property and the sale of it by the receiver. The case has been heard on the merits and a decree made making the receivership permanent and ordering a sale of the property as an entirety after 15 days to satisfy the amount due on the notes. Corliss and the Waterloo Creamery Company appeal. They raise two questions:

(1) That the court had no power to appoint a receiver of the real estate and the income thereof.

(2) That the sale, if one is to be had, should be a foreclosure sale.

1. The right of the trial court to appoint a permanent receiver to take possession of the real estate and the income thereof is challenged. This question was before us in an application by defendant Corliss to compel the trial court to set aside his order appointing a temporary receiver pending suit. *Corliss* v. *Clinton Circuit Judge,* 212 Mich. 476. In the opinion in that case Mr. Justice BROOKE pointed out very clearly that under the showing made the receiver was not appointed primarily for the purpose of acquiring possession of the real estate and the income thereof, but was appointed to preserve the property and avert the danger of a ruinous loss, not alone to plaintiff but to other creditors, and it was concluded that the circuit judge had not abused his discretion in making the appointment, citing *Ralph* v. *Saginaw Circuit Judge,* 100 Mich. 164; *Union Street-Railway Co.* v. *City of Saginaw,* 115 Mich. 300; *Union Trust Co.* v. *Electric Co.,* 152 Mich. 568; *Webber* v. *Genesee Cir-*

*cuit Judge,* 184 Mich. 112, and *Millen* v. *Potter,* 201 Mich. 1. The testimony on the hearing on the merits has strengthened our conviction that the former case was rightly decided, and that by reason of the complexity of the property the exception to the general rule should be applied.

2. The argument is made that if a sale is to be made it should not be a short sale without redemption but a foreclosure should be had analogous to that of a mortgage. The evidence shows that the property in suit as a going concern is worth upwards of $100,000. The property is an admixture of real property, personal property and intangible values arising out of the milk routes and patronage of the farmers. It appears in evidence that if these milk routes were eliminated, as they would be if any considerable interruption took place, the farmers would find other outlets for their milk, and with a loss of this patronage the entire property would depreciate in value 50 per cent. The chancellor further found that defendants, Corliss and the Waterloo Creamery Company, were insolvent in this State. The chancellor was moved by these considerations to order a sale of the property as an entirety without the right of redemption.

We are in accord with the chancellor's conclusion that the character of the property involved makes it an exception to the general rule that sales of real estate must be followed by a period of redemption. In considering the question of redemption the following exception is made in 27 Cyc. p. 1800:

"It has been held that a law providing a right of redemption from sales of real estate does not cover the case of a sale of the entire property of a *quasi*-public corporation, such as a railroad or a water company, including its real and personal property and franchise, but such a sale may be made as an entirety and without redemption." Citing *Peoria, etc., R. Co.*

v. *Thompson,* 103 Ill. 187; *Hammock* v. *Loan & Trust Co.,* 105 U. S. 77; *Pacific Northwest Packing Co.* v. *Allen,* 54 C. C. A. 648, 116 Fed. 312; *Farmers' Loan & Trust Co.* v. *Iowa Water Co.,* 78 Fed. 881; *Turner* v. *Railway Co.,* 24 Fed. Cas. No. 14259, 8 Biss. 380.

This exception is quoted and approved in *Webber* v. *Genesee Circuit Judge,* 184 Mich. 112. The question arose in that case over the order of sale of the properties of the Fenton Light & Power Company, which company was in the possession of a receiver. After quoting at length from *Hammock* v. *Loan & Trust Co., supra,* as to the reasons for the exception, the court said:

"So in the instant case, the business of this company being to furnish electricity for the village of Fenton and its citizens, the plant itself would have comparatively little value without its franchise, and, for the reason stated in the opinion cited it was within the power of the court in a proper case to order all the property sold as an entirety and without redemption." Citing authorities.

But counsel's reply to these cases is that it is an exception which has been created and applies only to *quasi*-public corporations. This same assertion was made in *Pacific Northwest Packing Co.* v. *Allen, supra,* but the court did not agree with it. It was there said:

"The general doctrine applicable to this case is not confined solely to railroad property, nor to cases where the general public is interested. It has been applied to canals, telegraphs, telephones, electric light, gas, and water plants as well as railroads; and in all such cases it has been held, under a great variety of circumstances and conditions—some stronger and others less in degree than presented in this case,—that the entire property should be sold as an entirety, without the right of redemption, notwithstanding the provisions of the State statutes where the property is situated allowing redemption of real estate."

We are unable to see any reason for the exception to the rule unless it is the necessity which arises from the character and complexity of the property. In *quasi*-public corporations the property owned is usually made up of real, personal and mixed, and also includes their franchises. To segregate these and sell them in parcels would be impracticable. Thus far there seems to be no question. It appears to us that instead of being a rule applicable only to *quasi*-public utilities it is applicable to them because their property is so intermixed that it would be impracticable to make a sale in any other way. The same reasons which would make the exception in favor of *quasi*-public corporations would apply to the case we are now considering. If the real estate were eliminated and sold by itself it would not sell for more than half what it would in connection with the personal property and milk routes, and if both real and personal were sold in separate parcels the milk routes, a valuable asset, would be wholly lost. Again, if the real estate should be sold to one person and the personal property to another and the milk routes to a third person, then the plant as a going concern would be destroyed. And if the plant were to be sold and the purchaser kept out of possession for 15 months with the attendant uncertainty as to whether he was to have the property, and the plant was not operated during the period of redemption, the value of the property would materially decrease during the time. It seems to us that the exigency which permits a receiver to be appointed to keep the plant in operation also furnishes a reason for selling the property as an entirety upon a short sale without redemption. Being convinced of this the decree of the lower court is affirmed, with costs to plaintiff.

WIEST, STONE, CLARK, SHARPE, and STEERE, JJ., concurred. FELLOWS, C. J., and MOORE, J., did not sit.