STATE ex rel. CONTINENTAL SUPPLY CO., Relator, *v.*
TULLOCK, Sheriff, Respondent.

(No. 5,330.)

(Submitted June 25, 1923. Decided July 11, 1923.)

[217 Pac. 348.]

*Mortgages—Foreclosure—Public Utilities—Common Carriers—*
*Petroleum—Pipe-lines—Redemption.*

> 1.  Under a mortgage of the entire property of a public utility
> or common carrier (a pipe-line company), consisting of real and
> personal property and franchises, and sold on foreclosure in its
> entirety, the right of redemption does not exist as to any part of
> it, since severance of a part of the property from the rest would
> be injurious to, if not destructive of, the whole.

Original application for writ of *mandamus* by the State,
on the relation of the Continental Supply Company, against
Guy Tullock, as Sheriff of Fergus County, State of Montana.
Writ issued.

*Mr. Wm. M. Blackford* and *Messrs. Bryan, Williams & Cave,*
of the Bar of St. Louis, Missouri, of Counsel, for Relator,
submitted a brief; *Mr. J. A. Walsh,* of Counsel, and *Mr. Black-*
*ford* argued the cause orally.

The right of redemption is purely a statutory right. (*Bank-*
*ing Corporation of Montana* v. *Hein,* 52 Mont. 238, 156 Pac.
1085.) But the right of redemption applies only to sales of
real property, or a leasehold interest in real property greater
than two years' unexpired term. (Sec. 9441, Rev. Codes 1921.)
The property in the instant case, making up one entire oil
pipe-line plant, consisting of real estate, franchises and per-
sonal property, was sold as an entirety at one sale. The lease-
hold interest and rights of way are real estate. The instru-
mentalities of the plant and works are, for the greater part,
personal property. The appliances, tools and implements used
in maintaining and operating the pipe-lines, and in the busi-

ness, are all personal property. The right granted by the legislature to the mortgagor to construct, maintain and operate its pipe-line along the public highways of this state is a franchise (*Northern Pac. R. R. Co. v. Carland,* 5 Mont. 146, 196, 3 Pac. 134). Likewise, the right to operate its pipe-line as a common carrier of oils and exact tolls from customers for service rendered is a franchise.

Relator's contention here is that the sale of all these things, commingled as they are and were, passed the absolute title thereto to relator without the right of redemption, and that the legislature never contemplated in the enactment of the provisions of sections 9441 to 9446, inclusive, relating to redemption of real property from foreclosure sales, any redemption of property of the kind involved in this proceeding when sold as an entirety. A similar question to the one in the instant case was presented to the supreme court of the United States in *Hammock* v. *Farmers' Loan & Trust Co.,* 105 U. S. 77, 26 L. Ed. 1111 [see, also, Rose's U. S. Notes], where the court held: "By the laws of Illinois the real estate, franchises and other property of the railroad corporation mortgaged as an entirety may be sold as an entirety under a decree of a court of equity without any right of redemption in the mortgagor or in judgment creditors as to such real estate." (See, also, *Columbia Finance & Trust Co.* v. *Kentucky Union Ry. Co.,* 60 Fed. 794, 9 C. C. A. 264; *Farmers' Loan & Trust Co.* v. *Iowa Water Co.,* 78 Fed. 881; *Pacific Northwest Packing Co.* v. *Allen,* 116 Fed. 312, 54 C. C. A. 648; *National Bank of Commerce* v. *Corliss,* 217 Mich. 435, 186 N. W. 717; *National Foundry & Pipe Works* v. *Oconto Water Co.,* 52 Fed. 43; affirmed, 59 Fed. 20, 7 C. C. A. 603; *McKenzie* v. *Bismarck Water Co.,* 6 N. D. 361, 71 N. W. 608; *Peoria etc. R. Co.* v. *Thompson,* 103 Ill. 187; Jones on Mortgages, 7th ed., sec. 1051aa; Jones on Corporate Bonds, 3d ed., sec. 336, 27 Cyc. 1800.)

*Mr. Charles J. Marshall, Mr. Ralph J. Anderson* and Messrs. *Geis & Wiedman*, for Respondent, submitted a brief; *Mr. Marshall* argued the cause orally.

The cases cited in the brief of relator are not in point and do not sustain his position of relator, for the reason that the facts in this case are much different than the facts stated in the cases cited by the relator in its brief. The cases cited sustain the position of the respondent as will be noted from an examination of the cases. From an examination of them it will be noted that the bill or complaint in each case asked for the relief granted, and set forth the necessity for granting the same, and that the decree in foreclosure granted the relief as prayed for. The case brought by the relator in the district court of Fergus county was an ordinary case in foreclosure, and the amended complaint of relator did not ask for any relief out of the ordinary, nor was it set forth in the amended complaint in foreclosure the necessity for granting any relief out of the ordinary, and especially the relief that relator is now seeking to obtain. The case brought in the district court was a case in equity, and the defendants by an examination of the amended complaint in foreclosure would not be advised that the relator was seeking to have the property sold in its entirety and without the right of redemption. Surely in an equity case the defendant is entitled to know just what relief is being prayed for so that he can be governed accordingly, and there is nothing in the entire proceedings of the relator in the district court that advises the defendants that any other relief would·be asked for than the relief as granted by law in the ordinary foreclosure proceedings of real estate. Under the present circumstances of this case, the plaintiff has a plain, speedy and adequate remedy at law, and there is no necessity for any extraordinary writ to be issued in connection with the proceedings. The plaintiff, upon filing application and making a proper showing, can have a receiver appointed under the foreclosure proceedings to take possession

of the property foreclosed upon.  This receiver can by order of court be authorized to make the necessary expenditures for keeping the property in repair, and can collect the rents and profits from the operation of the property.  The respondent respectfully submits that a peremptory writ of mandate should be denied.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original application for a writ of *mandamus*. Upon the filing of the affidavit by counsel for the relator, an alternative writ was issued, directed to the respondent as sheriff of Fergus county, commanding that he make and deliver a deed to the Continental Supply Company, a corporation, conveying to it certain described property, or show cause before this court on a day fixed why he has not done so.  The respondent appeared by answer, but at the hearing the cause was argued and submitted without dispute as to the facts.

It appears that on February 10, 1923, the relator commenced an action in the district court of Fergus county, against the Montana Pipe Lines Company et al., to foreclose two mortgages, covering its property.  The complaint is in usual form for the foreclosure of a real estate mortgage, and to it a general demurrer was interposed, which was by the court overruled and the defendants allowed two days within which to answer or further plead.  The defendants having failed to plead further, their default was regularly entered.  On March 26, 1923, judgment decreeing a foreclosure and sale of the mortgaged property was made and entered.

The language employed in the decree is in ordinary form. Therein it is ordered: "That all and singular the mortgaged property  *  *  *  or so much thereof as may be sufficient to raise the amount due the plaintiff for the principal and interest, attorney's fees, expenses in taking possession of and holding the  *  *  *  mortgaged property, and costs of  *  *  * suit, and expenses of sale, and which may be sold separately without material injury to the parties interested, be sold at

272   State ex rel. Continental S. Co. *v.* Tullock.   [June T.'23

[68 Mont. 268.]

public auction by or under the direction of the sheriff of the county of Fergus. That the defendant corporation, and all persons claiming or to claim from or under it, and all persons having liens subsequent to said mortgages, or either of them, by judgment or decree, or otherwise, upon the personal property described in said mortgages, or either of them, and their heirs or personal representatives, be forever barred and foreclosed of and from all equity of redemption and claim of, in and to said mortgaged personal property and every part and parcel thereof. That the defendant corporation and all persons claiming or to claim from or under it, and all persons having liens subsequent to said mortgages, or either of them, by judgment or decree, or otherwise, upon the real property described in said mortgages, or either of them, and their heirs or personal representatives, and all persons having any lien or claim by or under such subsequent judgment or decree, and their heirs or personal representatives, and all persons claiming under them, and all persons claiming to have acquired any estate or interest in said mortgaged real property subsequent to the filing of the  *  *  *  notice of the pendency of this action with the county clerk of the county of Fergus,  *  *  *  be forever barred and foreclosed of and from all equity of redemption and claim in, of and to said mortgaged real property, and every part and parcel thereof, from and after the delivery of the sheriff's deed to said real estate so sold, *  *  *  hereinafter described.''

On March 27, 1923, an order of sale was duly issued, and after the posting and publication of notice of sale as by law and the decree of foreclosure required, the respondent sheriff conducted a sale of the mortgaged property on April 21, 1923, and sold it in three separate lots. The relator was the purchaser of all of the property, and three separate certificates of sale were issued to it by the respondent. It is recited by the sheriff in his return of sale that he attended the sale at the respective times and places fixed therefor, and exposed the property for sale in separate lots or parcels, to the highest

bidders for lawful money of the United States, and there being
no bidders for separate lots or parcels, he then exposed for
sale and sold the following described property in one entire
lot, to-wit: "All that certain six-inch pipe-line for carrying
crude oil from the Cat Creek Oil Field in Fergus county, Mon-
tana, to the town of Winnett in said county, extending from said
Cat Creek Oil Field to said town of Winnett, a distance of
approximately nineteen miles, and the rights of way therefor,
extending from the property owned by Gail Miller and Lance
Miller, in the southwest quarter of section 15, in township 15
north, range 29 east, Montana principal meridian,   *   *   *
Also to the said pipe-line belonging  and connected therewith
are all branch pipe-lines and pipe used in connection therewith,
including 11,600 feet of two-inch pipe-line and 6,000 feet of
three-inch pipe-line, also one forty-car loading rack, and all
appurtenances, attachments and easements thereunto belonging
and all rights and property used in connection with said pipe-
line and lines, and appurtenant thereto; also all of the right,
title and interest of the said defendant under lease of the
east ten acres of the south half of the northwest quarter of
the southwest quarter of section 15, in township 15, north of
range 29 east, Montana principal meridian, and all the tene-
ments and appurtenances thereunto belonging or in anywise
appertaining, including all and singular the buildings, engines,
pumps and other machinery and works of said pipe-lines,
constructed thereon for the use and operation of said pipe-
line and pipe-lines; also all other property which in any way
constitutes any part of said pipe-lines, or used in connection
therewith, also all water, water rights, ditches, reservoirs,
reservoir sites, aqueducts and appropriations and franchises
upon, leading to, connected with, or usually had and enjoyed
in connection with the said pipe-lines, and each and every part
and parcel thereof, together with all the rights, titles, interests,
hereditaments and appurtenances unto the said pipe-lines and
pipe-line plant belonging or in any wise appertaining, said
pipe-line being commonly known and designated at and in the

vicinity of said Cat Creek Oil Field, and at and in the vicinity of the town of Winnett, as the Montana Independent Pipe Line; 1 Beaver stock and die from 2½″ to 6″; 1 pr. 6″ Lay tongs; 1 3 HP type 'Z' F–M engine w/ 3½x5″ Typhoon pump; * * * 1 40-car loading rack and all appurtenances, attachments and easements thereunto belonging and all rights and property used in connection therewith; 1 Underwood type-writer, 2 portable telephones; 1 Ford truck; 1 Velie truck; also all other appurtenances, including all other tools, implements and machinery used in connection with said pipe-line, or in anywise thereunto belonging or connected therewith.''

The property specifically described above, together with the [1] other property sold at sheriff's sale, was mortgaged in its entirety to the relator, to secure the payment of two certain promissory notes aggregating $110,000 and interest, on account of the purchase price of the pipe, accessories, supplies and materials which entered into the construction of a pipe-line by the Montana Pipe Lines Company, for the purpose of carrying crude oil products produced in the Cat Creek oil field for delivery in the town of Winnett. The balance found to be due on these mortgages together with attorney's fees and costs amounted to $51,594.63. The property above described was sold to the relator for $49,000, and a certificate of sale duly executed and delivered to it therefor.

There were two other sales of property under the decree of foreclosure, one embracing a lot of personal property and equipment on hand, sold to the relator for $1,600, and the other comprising certain town lots in the town of Winnett, also sold to the relator for $970. The property first sold, herein particularly described, is all that is involved in this proceeding.

As to it, the only question presented for determination is whether there exists a right of redemption with respect thereto. If so, the sheriff is justified in refusing to execute and deliver a deed for the property; otherwise the sale was absolute and the relator was at once entitled to a deed.

It appears that the defendant Montana Pipe Lines Company, in the foreclosure action, was and is a corporation regularly incorporated under the laws of the state of Delaware, lawfully doing business in Montana; its objects and purposes, among others, being to operate pipe-lines and tanks, and to transport crude petroleum oils through such pipe-lines for the public generally. In the year 1921 it constructed its main pipe-line running from the Cat Creek oil field to the town of Winnett, in Fergus county, a distance of nineteen miles, besides several branch lines. As accessories thereto, it obtained by purchase, conveyance or otherwise, real estate, rights of way, franchises, privileges and other property, to be used in connection therewith. Prior to the foreclosure of the mortgages and judicial sale of such property, the mortgagor operated its pipe-line as a common carrier, at rates established by the board of railroad commissioners of the state of Montana. The affidavit recites that the pipe-line plant and works has been closed down, and out of use since relator, on the sixth day of February, 1923, took possession thereof, under the terms of the mortgage foreclosed, pending foreclosure and sale; that since the sale of the plant and works the same could not be used without the expenditure of considerable sums of money in repairing the pipe-line plant and works, and restoring the same to its former serviceable condition and use, and that relator has been and is unable to have the pipe-line operated and put to use, although there is great need for the operation of the same in carrying crude oils from Cat Creek oil field to the town of Winnett, for the market, by reason of the fact that certain stockholders and persons interested in the Pipe Lines Company claim the right of redemption of the plant and works and pipe-line from foreclosure sale, within the year from date of sale; that no redemption, or offer of redemption, from the sale, or promise to redeem, has been made by any such person or persons, or any person or persons, otherwise; and that by reason of such claim and claims relator has been, and is, unable to interest any person, company or association in the operation of

the plant by reason of the condition thereof, and the require-
ment of the expenditure of considerable sums of money to
rehabilitate and restore the same to its former serviceable
condition; that the pipe-line is one of only two pipe-lines in
the Cat Creek field; that the other pipe-line is a four-inch
pipe-line of the Mid-West Company, operating from the Cat
Creek field to the town of Winnett in carrying crude oils from
the field to Winnett, for transportation, and is wholly inade-
quate for carrying the production of the Cat Creek field; that
it is necessary that the pipe-line, purchased by relator at
sheriff's sale be put to use for carrying large portions of the
production of oil from the Cat Creek field, for the market,
and that without the use of the pipe-line, production is largely
impeded, and the market deprived of large portions of crude
oils from the Cat Creek field.

The statute provides that "Upon a sale of real property,
the purchaser is substituted to and acquires the right, title,
interest, and claim of the judgment debtor thereto; and when
the estate is less than a leasehold of two years' unexpired term,
the sale is absolute. In all other cases the property is subject
to redemption, as provided in this chapter." (Sec. 9441, Rev.
Codes 1921.)

A redemption from sale is authorized by the judgment
debtor and certain designated redemptioners (*Id.*, sec. 9442)
within one year after the sale. (*Id.*, sec. 9443.)

"A mortgage is a lien upon everything that would pass by
a grant of the property" (*Id.*, sec. 8251), and this applies
alike to realty and chattels. (*Demers* v. *Graham*, 36 Mont.
402, 14 L. R. A. (n. s.) 431, 93 Pac. 268.)

"Prior to 1917 our statute dealing with foreclosures did not
provide expressly for redemption, and in the absence of any
such provision this court held, in harmony with the great
weight of authority, that the statutory right of redemption
from sale under execution attaches to a sale under mortgage
foreclosure." (*Elston* v. *Hix*, 67 Mont. 294, 215 Pac. 657; see,

also, *Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 117; *Id.,* sec. 9472.)

On mortgage foreclosure the provisions of section 9467, Revised Codes of 1921, are exclusive as to the property to be sold, and the manner of sale. (*Thomas* v. *Thomas,* 44 Mont. 102, Ann. Cas. 1913B, 616, 119 Pac. 283; *Elston* v. *Hix, supra.*)

The court should by its judgment direct a sale of the "incumbered property or so much thereof as may be necessary" (*Id.,* sec. 9467), the sheriff being required only to look to the order of sale for his orders to be executed. In this case the sheriff was directed to sell "all and singular the mortgaged property, or so much thereof as may be sufficient. * * * " The decree of foreclosure gives recognition to two kinds of property covered by the mortgage ordered to be sold, *viz.,* real estate and personalty. As to the personal property it directs an absolute sale, and as to the realty, the right of redemption is recognized. The sheriff in executing the judgment so classified and noticed the property for sale, occasioning the three separate sales.

There being no express finding made by the court as to the nature or character of the property to be sold, or the manner of sale, the sheriff made his own determination as to the division of the property calculated to bring the best returns. However, it was a question of fact for determination by the court as to whether all the mortgaged property constituted a necessary part of the whole, or whether any part thereof was susceptible of segregation and independent sale. It not having been so determined, the sheriff pursued the most natural course in an endeavor to sell the property to best advantage. In so doing, the relator became the purchaser of all of the property, and certificates of sale were issued to it by the sheriff.

It appears that the mortgaged property was devoted to use as a public utility in the transportation of oil for hire at rates established by the Board of Railroad Commissioners (*Id.,* sec. 3851), and the business is classified as that of a common carrier (*Id.,* sec. 3849). The mortgagor had conferred upon

it by the state the right to lay, maintain, and operate its pipe-lines along, across, and under public highways (*Id.*, sec. 3850), and to it was accorded the right of eminent domain (*Id.*, sec. 6658). So that the state and the public generally are interested in the operation of the property as an entirety, and in the prevention of its disuse, damage, or destruction. It is in nature a *quasi*-public property. The property mortgaged comprises an entirety, although the court's decree is silent on the subject. As to the portion of the property here in question, it appears to comprise one plant consisting of real estate, franchises, and personal property. Separation of a part of the property would be injurious if not destructive of the whole. In our opinion the right of redemption under the statute is not applicable to a judicial sale of this class of property, for the all-sufficient reason that were it to be held to apply, the value of the entirety might thereby depreciate or be rendered valueless. As an operating unit in place, or one capable of immediate operation, it has value: whereas, nonuser, or conditions preventing use, will quickly result in deterioration and even entire loss.

It will be observed from a reading of the statute that the right of redemption does not extend to personal property. "It has reference only to real estate—to lands in the ordinary acceptation of those terms. The Legislature, in dealing with this question, used general terms, without reference to the necessities that might arise by the exceptional character, conditions, and surroundings of the property involved. In construing statutes of this general character, the Legislature will be presumed to know that exceptions might arise to the language used, which would by a literal construction lead to absurd results. In such cases the authorities declare that the statute should receive a sensible construction; that the reason of the law in such cases should prevail over its letter." (*Pacific Northwest Packing Co.* v. *Allen,* 116 Fed. 312, at 314, 54 C. C. A. 648, 650.)

"From a sale of land a redemption is allowed—from a sale of personal property no such redemption is permitted; and since the two are indissolubly combined, by virtue of the mortgage, decree and sale, there is just as much reason, so far as the question depends upon the two kinds of property when separately considered, for contending the right of redemption is denied, as there is that it is given. And since it devolves on the party alleging such right to show a clear case within the statute, it follows that under the circumstances stated there would be no right of redemption." (*Peoria & S. R. R. Co.* v. *Thompson*, 103 Ill. 187, at 209.)

The statute giving the right of redemption did not contemplate upon foreclosure sale the severance of an oil pipe-line into its constituent elements in order that the part which savors of realty may be redeemed; nor does it contemplate so peculiar and composite a property should be embraced within the term "real property" as therein used. (*Columbia Finance & Trust Co.* v. *Kentucky Union Ry. Co.*, 60 Fed. 794, 9 C. C. A. 264; *Hammock* v. *Farmers' Loan & Trust Co.*, 105 U. S. 77, 26 L. Ed. 1111 [see, also, Rose's U. S. Notes]; *Farmers' Loan & Trust Co.* v. *Iowa Water Co.* (C. C. S. D. Iowa), 78 Fed. 881; *Pacific Northwest Packing Co.* v. *Allen, supra; National Bank of Commerce* v. *Corliss*, 217 Mich. 435, 186 N. W. 717; *National Foundry & Pipe Works* v. *Oconto Water Co.* (C. C. E. D. Wis.), 52 Fed. 43; affirmed 59 Fed. 20, 7 C. C. A. 603; *McKenzie* v. *Bismarck Water Co.*, 6 N. D. 361, 71 N. W. 608; *Peoria & S. R. R. Co.* v. *Thompson, supra;* 27 Cyc. 1800.)

The general rule applicable is laid down by Professor Jones, in his splendid work on Mortgages, as follows: "No right of redemption is allowed after a foreclosure sale of the property of a public corporation, or of a *quasi*-public corporation, such as a canal, a railroad, telegraph, telephone, electric light, gas or water company. A mortgage of the property of such a corporation covers not only its real property, but also its franchise and personal property as an entirety. The statutory provisions in regard to redemption from foreclosure sales are

not applicable to a sale of the property of such a corporation under a mortgage of its property as an entirety, for if redemption of the real property were allowed, there being no redemption of the franchise and personal property, it would result in the practical destruction of the value of the whole.'' (2 Jones on Mortgages, 7th ed., sec. 1051aa.)

In the leading case of *Hammock* v. *Farmers' Loan & Trust Co., supra,* Mr. Justice Harlan, speaking for the court, declared that notwithstanding the Illinois statute giving a right of redemption to the mortgagor of real estate sold under decree of foreclosure, such statute has no application to the lands of a railroad corporation mortgaged in connection with its franchises and personal property. Applicable to the case before us, we quote with approval language employed in that decision, as follows: ''Real estate, thus mortgaged with the franchises of the company, is of necessity relieved from the operation of that statute. There may possibly be cases in which real estate, of an ordinary kind, owned and mortgaged by a railroad corporation, cannot be sold by decree of court, except subject to the right of redemption; as when it is not used for necessary railroad purposes, or when it was mortgaged separately from its franchises and other property. What may be the operation of the statute in such cases we do not now decide. All that we do decide is, that, by the laws of Illinois, the real estate, franchises and other property of a railroad corporation, mortgaged as an entirety, may be sold, as an entirety, under the decree of a court of equity, without any right of redemption in the mortgagor or in judgment creditors as to such real estate.''

Although the complaint in the foreclosure proceedings, and the decree entered therein, were faulty in not showing the character of the property mortgaged, and the necessity of sale thereof in its entirety without right of redemption, yet from the facts before us it sufficiently appears that the property in fact constitutes a public utility and was therefore properly sold in its entirety.

The citation of authorities made by counsel, and discussion of the application thereof, have materially assisted us in solving the serious problem presented.   We express our appreciation.

The peremptory writ will issue forthwith.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied September 11, 1923.