# STATE OF MICHIGAN

# COURT OF APPEALS

---

FREDERICK L. KUBIK REVOCABLE TRUST
dated 12/16/00,

       Plaintiff-Appellee,

v

THE HOME APARTMENTS, LLC, and ZEEV
SAGI,

       Defendants-Appellants.

UNPUBLISHED
December 19, 2017

No. 332958
Genesee Circuit Court
LC No. 14-103134-CZ

---

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendants appeal the trial court's order approving the eighth report of the court-appointed receiver, approving the receiver's fees and costs, granting a final accounting and distribution, and discharging the receiver. Defendants also challenge several prior orders entered by the trial court. For the reasons stated below, we affirm.

## I. BASIC FACTS

This case arises from plaintiff's ownership and sale of apartment complexes. On May 30, 2012, plaintiff, as the seller, entered into a land contract with defendant Sagi's company, Sharon Apartments, LLC, for the sale of apartment complexes for $450,000. A receiver was appointed when defendant Sagi and Sharon Apartments, LLC failed to pay taxes and insurance on the properties, and plaintiff defaulted on its note to Talmer Bank. The receiver then entered into a purchase agreement with defendant The Home Apartment, LLC ("THA"), which was owned by defendant Sagi. On October 22, 2013, the trial court entered a stipulated order, authorizing the sale and requiring THA to: (1) pay $50,000 to plaintiff at closing; (2) pay $164,820.59 plus interest to Talmer Bank; (3) pay various costs and fees to Talmer Bank, plaintiff, and the receiver; and (4) execute a note, secured by a mortgage, to plaintiff in the amount of $134,000, calling for payments of $1,500 a month for 36 months and with the balance of $80,000 due on or before three years. The stipulated order also provides that the agreement and any related documents could be modified, amended, or supplemented by the parties. In an addendum to the purchase agreement and stipulated order, THA and plaintiff modified the purchase price such

-1-

that plaintiff would receive $35,000 at closing, and the note would be in the amount of $119,000. On November 4, 2013, the receiver sold the property to THA. According to the receiver, he received $284,076.01 in cash from THA at closing, and he issued a deed to THA.[1] The receiver admitted, however, that the deed did not refer to any mortgage or note, and that the note was never delivered to plaintiff.

In July of 2014, plaintiff filed a complaint seeking monetary damages based on THA's failure to make the required payment on the note and asking for the appointment of a receiver. Plaintiff contended that without a receiver, THA would be unjustly enriched by collecting rent payments without paying plaintiff what it was owed, and that the appointment of a receiver would protect its interests and ensure that the rent collected was used appropriately. Although the court appointed a receiver, it subsequently removed the receiver, on THA's motion, after it received documentation showing that the property's insurance and water bill was being paid.

On December 15, 2014, the trial court, again, reappointed the receiver. On four occasions, thereafter, defendants moved to remove the receiver but the court denied the various motions. In an amended complaint filed against defendant Sagi and THA on August 18, 2015, plaintiff sought foreclosure of the mortgage and reformation or rescission of the sales documents, and alleged that defendant Sagi made material misrepresentations. After a bench trial, the court held that the receiver could sell the properties by open bidding and allowed defendant Sagi to bid on the properties.

In its December 29, 2015 opinion, the trial court phrased the issue at trial as: "[D]id a real estate closing which took place on November 4, 2013 establish Home/Sagi as the owner of the property—without obligation to [plaintiff]. Or did that closing serve as a segue to a new relationship between [plaintiff] and Home/Sagi where [plaintiff] was still owed money for this property." The court concluded that the goal of the November 4, 2013 closing was "to get Talmer out of [the] picture." The court credited plaintiff's and the receiver's testimony that the sale had two purposes—to take Talmer Bank out of the picture and to allow plaintiff to forge a new deal with defendants. The court also stated that both plaintiff and the receiver testified that the money paid to plaintiff at closing did not end plaintiff's interest in the properties. On the basis of the testimony, the trial court found that plaintiff retained an interest in the properties.

The trial court also found that the fact that defendants could not produce all of the funds required underscored that a continuing obligation existed, especially where the stipulated order and addendum specifically provided for a $1,500-a-month obligation by THA to plaintiff. The trial court also found that the purchase agreement could not be read as freezing out plaintiff's

---

[1] The "Buyer's Final Settlement Statement" indicates that $284,076.02 was charged to the buyer at the closing on November 4, 2013. This included consideration of $238,913.62 plus various title/escrow charges and disbursements. The "Seller's Final Settlement Statement" similarly states that the total consideration credited to the seller was $238,913.62. It then list the total charges to the seller in the amount of $239,413.62, which included the loan payoff to Talmer Bank, the Receiver's fees, the payment to plaintiff, and other costs and fees. Neither document refers to the note or mortgage.

interest in the property and that the promissory notes suggested a future obligation by THA. In addition, the trial court found that the correspondence contradicted the notion that THA owed no further monies to plaintiff. It rejected defendants' argument that the failure to deliver the note and the mortgage rendered them unenforceable because "whatever hold-up occurred was because of lingering disputes on the amount of the note, not because <u>no</u> money was owed." The court then ruled that defendants were in default on the obligation and that plaintiff was entitled to the remedies allowed by the agreement. It ordered the receiver to put the properties up for bid pursuant to its prior order. The trial court also denied defendants' motion for reconsideration.

## II. LEGAL ANALYSIS

### A. APPOINTMENT OF THE RECEIVER

On appeal, defendants first argue that the trial court erred by appointing a receiver to manage the property in question. They contend that the circumstances did not warrant or justify appointment of a receiver. We disagree.[2]

The trial court properly exercised its discretion in appointing a receiver. In its January 5, 2015 amended order, the trial court cited MCL 600.2926 and MCL 600.2927 as its basis to appoint a receiver. At a subsequent hearing, the trial court explained that defendants failed to care for the properties and that the taxes were not being paid. MCL 600.2926 provides, in part, that "[c]ircuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law." "Under this provision, a circuit court has 'broad jurisdiction' to appoint a receiver in appropriate cases." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 390; 853 NW2d 421 (2014) (citation omitted). In *Reed v Reed,* 265 Mich App 131, 161-162; 693 NW2d 825 (2005), this Court explained:

> [MCL 600.2926] has been interpreted as authorizing a circuit court to appoint a receiver when specifically allowed by statute and also when no specific statute applies but the facts and circumstances render the appointment of a receiver an appropriate exercise of the trial court's equitable jurisdiction. The purpose of appointing a receiver is to preserve property and to dispose of it under the order of the court. In general, a receiver should only be appointed in extreme cases. But a party's past unimpressive performance may justify the trial court in appointing a receiver. [Quotation marks and citations omitted.]

MCL 600.2927(2) provides:

---

[2] A trial court's decision to appoint a receiver is reviewed for an abuse of discretion. *Ypsilanti Fire Marshall v Kircher (On Reconsideration)*, 273 Mich App 496, 523; 730 NW2d 481 (2007). A trial court abuses its discretion when it chooses an outcome that is outside the range of principled outcomes. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).

If such mortgagor or grantor in such instrument fails to pay such taxes or insurance premiums upon property subject to the terms of a mortgage, trust mortgage, or deed of trust containing such agreement the circuit court having jurisdiction of such property may, in its discretion upon complaint or motion filed by such mortgagee, grantee, assignee thereof or trustee under such instrument and upon such notice as the court may require, appoint a receiver of the property for the purpose of preventing such waste. Subject to the order of the court, the receiver may collect the rents and income from such property and shall exercise such control over such property as to such court may seem proper.

Defendants cite *Meyer Jewelry Co v Meyer Holdings, Inc*, 906 F Supp 428, 432 (ED Mich, 1995), which lists several factors that courts may consider in the exercise of their discretion to appoint receivers, and they argue that "none of the preceding requirements were present that warranted or justified the appointment of the Receiver." Defendants, however, fail to elaborate on their argument or apply the listed factors to the facts of this case. "A party abandons a claim when it fails to make a meaningful argument in support of its position." *Fellows v Mich Comm for the Blind*, 305 Mich App 289, 295 n 5; 854 NW2d 482 (2014) (quotation marks and citation omitted). Defendants also fail to address the trial court's reliance on MCL 600.2926 and MCL 600.2927, and they do not dispute the trial court's findings that they were not maintaining the properties or paying taxes on the properties, which are circumstances supporting the appointment of a receiver under those statutes.

Accordingly, defendants have failed to establish that the trial court's appointment of the receiver constitutes an abuse of discretion.

## B. FORECLOSURE SALE WITHOUT A REDEMPTION PERIOD

Defendants next argue that the trial court erred by allowing a sale of the properties without a foreclosure sale and without redemption rights. Defendants did not preserve this issue for appellate review because they first raised it in their motion for reconsideration. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) (holding that "[w]here an issue is first presented in a motion for reconsideration, it is not properly preserved."). Therefore, our review is for plain error affecting substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). Although we agree that the trial court's failure to order a foreclosure sale with a redemption period was plain error, we conclude that the error did not affect defendants' substantial rights, and therefore, reversal is not required.

Generally "sales of real estate must be followed by a period of redemption." *Nat'l Bank of Commerce v Corliss*, 217 Mich 435, 438; 186 NW 717 (1922). The trial court did not provide an explanation for allowing the sale of the properties without a redemption period, and did not address the argument in its order denying defendants' motion for reconsideration. However, at a later hearing, the court explained that it had given the receiver the power of sale in a prior order and that order was never appealed. The trial court also stated that it had given defendant Sagi the opportunity to bring money to court and redeem the properties, but he failed to do so. Although defendants claim that they were entitled to six months to redeem the property, they do not assert that they would have actually redeemed. In addition to the trial court giving defendants the opportunity to recover the property, it also allowed defendant to bid at the auction but they failed

-4-

to do so. In the case of irregularities in a foreclosure proceeding, the Michigan Supreme Court has held that plaintiffs must show that they were prejudiced by a defendant's failure to comply with the applicable statute, i.e. "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 115-116; 825 NW2d 329 (2012). Defendants in this case have not made such a showing.

Furthermore, the sale of the property has already occurred, and defendants do not seek to vacate the sale on appeal.[3] Rather, defendants seek reversal of the appointment of the receiver, the order finding that plaintiff had an interest in the property, and a return of the money paid to plaintiff, its attorney, and the receiver. However, as previously discussed, the receiver was properly appointed and the trial court did not err in its interpretation of the parties' agreement.

Defendants also argue that the trial court erred by granting relief that contravened the specific language of the note and mortgage, which required a foreclosure sale.

Defendants are correct that the mortgage itself provided for foreclosure in the event of a default. Moreover, a foreclosure with a redemption period was required for the sale of real estate. Nonetheless, defendants have not established that the error affected their substantial rights and they do not seek to vacate the sale of the property. To the extent that defendants claim that the mortgage provided that they were entitled to any surplus as a result of a foreclosure sale, the trial court ordered that defendant Sagi was to receive any surplus from the sale. Accordingly, appellate relief is not warranted.

## C. RELIEF NOT SOUGHT IN COMPLAINT

Defendants also argue that the trial court erred by granting relief not sought by plaintiff in its amended complaint. Specifically, defendants argue that the trial court's decision giving the receiver the right to sell the property at bid was beyond the scope of relief sought in the complaint. We disagree because sale of the property was within the scope of the relief sought.[4]

In its second amended complaint, plaintiff sought a monetary judgment, appointment of a receiver, injunctive relief, an order of foreclosure and sale of the property, reformation or rescission of the sales documents, and all other reliefs appropriate under the circumstances. Even if the relief granted by the trial court was covered by the catchall provision of the complaint requesting all other appropriate reliefs, a foreclosure sale with the right of redemption was required for the sale of real estate. Nonetheless, as previously explained, defendants have not established that the error affected their substantial rights and they do not seek to vacate the sale of the property. Therefore, appellate relief is not warranted.

## D. EVIDENTIARY ISSUES

---

[3] Defendants were awarded any surplus from the sale.

[4] Again, defendants did not preserve this issue because they first raised it in their motion for reconsideration. *Vushaj*, 284 Mich App at 519.

Defendants argue that the trial court erred by admitting evidence in violation of the parole evidence rule and the statute of frauds, and by reinterpreting the parties' agreements and writings. Specifically, defendants contend that the trial court was required to rely only on the parties' written agreement, which they claim was embodied in the stipulated order, the addendum, and the closing statements. According to defendants, the trial court erred by considering the parties' testimony and evidence of other communications between the parties to find the existence of the note and mortgage. In ruling on defendants' motion for reconsideration, the trial court found, however, that the record as a whole, including the pre- and post-closing written documents, supported its finding that the financial relationship between the parties did not end at the closing.[5]

"The parole evidence rule may be summarized as follows: [p]arole evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Hamade v Sunoco Inc (R & M)*, 271 Mich App 145, 166; 721 NW2d 233 (2006) (quotation marks and citation omitted). The Michigan Supreme Court has acknowledged that there are "many exceptions to the parole evidence rule." *Ferd L Alpert Indus, Inc v Oakland Metal Stamping Co*, 379 Mich 272, 276; 150 NW2d 765 (1967). One of the specific exceptions is that the rule does not preclude consideration of evidence that shows that the parties did not integrate their agreement or that the agreement in question was only partially integrated. *Hamade*, 271 Mich App at 167-168.

With regard to the parole evidence rule, although not expressly stated in these terms, the trial court found that, to the extent that the stipulated order, addendum, and closing statements did not reference the note or mortgage, the parties did not intend those documents "to be a complete expression of their agreement." *Id.* at 167-168. The trial court's finding is supported by the trial testimony of the receiver and plaintiff that the note and mortgage were not mentioned in the closing statements, but was part of the agreement between plaintiff and defendant Sagi. Therefore, because an exception to the parole evidence rule applied, the trial court did not err by considering extrinsic evidence to find that the note and mortgage were part of the parties' agreement.

Further, under the statute of frauds, "an oral promise to sell land is unenforceable." *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 441; 830 NW2d 785 (2013). With regard to the statute of frauds, the trial court found that the written documents established the relationship between the parties. Although it relied, in part, on testimony from the receiver and

---

[5] To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal. *Klapp v United Ins Group Agency*, 259 Mich App 467, 475; 674 NW2d 736 (2003). Defendants did not object at trial to the admission of any evidence on the basis of the parole evidence rule or the statute of frauds. They first raised these arguments in their motion for reconsideration. Therefore, this issue is unpreserved. See *Vushaj*, 284 Mich App at 519. This Court reviews unpreserved error for plain error affecting substantial rights. *Demski*, 309 Mich App at 426-427.

plaintiff, it found that the stipulated order and addendum both referenced the $1,500-a-month obligation. Similarly, the promissory note itself established the obligation. These findings are not clearly erroneous. Because the parties' agreement was in writing, there was no violation of the statute of frauds.

Similarly, we reject defendants' argument that the trial court re-interpreted the parties' agreement. The trial court found that the mortgage and note were part of the agreement based on the stipulated order, the addendum, the promissory notes, the email correspondence, and the testimony of plaintiff and the receiver. For the reasons discussed earlier, the extrinsic evidence was properly considered. The stipulated order, the addendum, and the trial testimony supported the trial court's finding that the note and mortgage were valid and enforceable. The stipulated order and addendum both referenced the note and mortgage. Moreover, both plaintiff and the receiver testified that the note and mortgage were part of the agreement. Furthermore, given the cash offer of $375,000 pending at trial, a sale price of approximately $400,000 was reasonable.

Contrary to defendants' argument that the stipulated order provided that the sale was free and clear of all liens and encumbrances, the stipulated order provided only that the sale was free and clear of certain specified mortgage and liens, and it did not list the mortgage and note in favor of plaintiff from THA. The trial court also rejected defendants' argument based on the lack of delivery of the note and mortgage, finding that the delay was based on a dispute regarding the amount of the note. The letter to the title agency on November 27, 2013, further demonstrated that the note and mortgage were delivered to the title company with instructions for it to hold them in escrow pending instructions from defendant Sagi. Moreover, defendants have abandoned on appeal any argument regarding the lack of delivery by failing to cite any authority. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) (stating that "where a party fails to cite any supporting authority for its position, the issue is deemed abandoned.").

In sum, although the closing documents did not refer to the note or mortgage, the stipulated order and addendum did, and additional evidence supports the trial court's finding that the note and mortgage were part of the parties' agreement.

D. MERGER DOCTRINE

Finally, defendants contend that the trial court erred by considering the mortgage and any claims based on the mortgage, which no longer existed once the deed was granted. We disagree.[6]

In *Chapdelaine v Sochocki*, 247 Mich App 167, 171; 635 NW2d 339 (2001), we stated, "Generally, a deed executed in performance of a contract for the sale of land operates as

---

[6] Defendants did not preserve this issue on appeal by failing to raise it below. Therefore our review is for plain error affecting substantial rights. *Demski*, 309 Mich App at 426-427. Notably, to the extent that defendants' attorney mentioned merger at trial, he was referring only to the merger of the purchase agreement with the deed.

satisfaction and discharge of the terms of the executory contract. However, an exception exists where the deed does not constitute full performance of the purchase agreement." (Quotation marks and citations omitted). Thus, "where delivery of the deed represents only partial performance of the preceding contract, the unperformed portions are not merged into it." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 375; 761 NW2d 353 (2008).

Although this issue was not considered by the trial court, nonetheless, it essentially found that the deed did not constitute full performance of the purchase agreement because THA remained obligated on the note to plaintiff after closing. Accordingly, THA's unperformed obligation on the note was not merged into the deed. Therefore, the trial court's consideration of the note and mortgage did not constitute plain error.

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro